FÉLIX MEJÍAS SANTANA, ADMINISTRADOR DE ESTABILIZACIÓN ECONÓMICA, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. LUIS R. POLO, JUEZ, demandado; GERMÁN VÉLEZ POSADA, DR. BASILIO DÁVILA Y OTROS, interventores.

Número 2028.

*Sometido:* 1 de octubre de 1953. *Resuelto:* 29 de octubre de 1953.

*Juan T. Peñagarícano* y *Rafael A. Rivera Cruz*, abogados del peticionario; *Miranda Esteve & Martínez Álvarez, Jr.*, abogados del interventor Vélez Posada; *Celestino Iriarte* y *F. Fernández Cuyar*, abogados del interventor Dávila.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Este recurso de *certiorari*, tramitado ante nos en virtud de una petición de Félix Mejías Santana, Administrador de Estabilización Económica, envuelve la cuestión de si un arrendamiento del Hotel De Diego, localizado en Santurce, es un arrendamiento de un edificio comercial o local para negocio, o es de un negocio en sí, fuera del ámbito de la Ley de Alquileres Razonables, en virtud de lo resuelto en los casos de *Orsini* v. *Sánchez*, 67 D.P.R. 863 y *Ortiz* v. *Cesaní*, 68 D.P.R. 412.

Después de haberse celebrado una vista ante el anterior Administrador de Inquilinato Insular, sustituído hoy por el Administrador de Estabilización Económica, en cuya vista se presentó prueba documental y testifical, el Administrador resolvió que el arrendamiento era de un local comercial y no de un negocio, y procedió a reducir el canon de arrendamiento de $600 a $420 mensuales, a ser pagado por el subarrendatario, Dr. Basilio Dávila, a Justo Reyes, David Gon-

zález y Julio González, subarrendadores y arrendatarios originales del arrendador Germán Vélez Posada, dueño del hotel y del inmueble. El arrendador original, Vélez Posada, interpuso un recurso de revisión el 7 de diciembre de 1949 ante la antigua Corte de Distrito de San Juan. Finalmente, el 6 de marzo de 1953 la sala de San Juan del Tribunal Superior dictó opinión y sentencia declarando con lugar el recurso de revisión y anulando y dejando sin efecto la resolución del Administrador. El tribunal de San Juan entendió y resolvió que no se trataba del arrendamiento de un edificio sino de un negocio de hotel. Contra esa sentencia se ha interpuesto este recurso de certiorari por el Administrador de Estabilización Económica.

En el caso de *Orsini* v. *Sánchez*, supra, se resolvió que no estaba sujeto a la protección de la Ley de Alquileres Razonables un contrato de arrendamiento de un negocio ya establecido y en marcha (*going concern*), con las maquinarias y equipos necesarios para su funcionamiento y explotación, no tratándose de un mero arrendamiento de un edificio. En la opinión se dice, en parte, lo siguiente:

"La Ley de Alquileres Razonables fué aprobada con el propósito de remediar una situación de emergencia creada por la gran demanda y por la escasez de locales para viviendas y para negocios, como consecuencia del estado de guerra. El 'control sobre alquileres', consistente en la fijación por el Administrador de cánones máximos y en la restricción de los desahucios, fué establecido con el propósito de proteger a los inquilinos contra las prácticas injustas de los arrendadores de exigir alquileres excesivos e irrazonables y para evitar que los inquilinos de viviendas o de locales comerciales fuesen lanzados a la calle, sin poder encontrar otro local para establecer su vivienda o para trasladar su comercio, negocio o industria. Las razones que justifican la intervención del poder regulador—*police power*—del Estado, para la restricción de un desahucio, no existen en el presente caso. El arrendatario Sánchez Parra no es dueño del negocio establecido en la estación de gasolina. Todo lo que allí existe y es utilizado para la explotación del negocio —con excepción de las existencias de artículos para la venta—

es propiedad del arrendador Orsini. Y ya hemos visto que de acuerdo con los términos del contrato el arrendador está obligado a comprar dichas existencias por su justo valor. El objeto del arrendamiento en este caso es, pues, una estación de gasolina, con las maquinarias y equipo necesarios para su funcionamiento y explotación. Lo que se ha arrendado es un negocio ya establecido y en marcha—*going concern*—que a partir de la fecha del arrendamiento seguirá siendo explotado por el arrendatario en vez de serlo por el dueño. *La edificación o 'garage' es puramente incidental al negocio allí instalado,* pues posiblemente el arrendatario no hubiese arrendado dicho garaje a no ser por las maquinarias y equipos allí instalados y por el negocio ya establecido por el arrendador de la estación." (Bastardillas nuestras.)

Como ya hemos indicado, la investigación ahora pertinente se refiere a la aplicabilidad de los casos citados al de autos. En la vista celebrada ante el Administrador se admitieron en evidencia tres escrituras públicas. La primera, de fecha 24 de mayo de 1948, es una intitulada "Arrendamiento de Negocio", otorgada por Germán Vélez Posada, como arrendador, y Justo Reyes Morales y David y Julio González Fernández, como arrendatarios. Se hace constar que Vélez Posada es dueño de un establecimiento mercantil situado en la Avenida De Diego, de Santurce, denominado Hotel De Diego, que "se dedica al negocio de hotel"; que el referido "negocio de hotel" se compone de dos edificios con varias habitaciones, todas ellas con lavamanos y *closets* así como instalación eléctrica y lámparas e instalación y distribución de timbres individuales para cada habitación; que los edificios han sido dedicados por varios años al negocio de hotel; que el arrendador "por la presente escritura arrienda a los dichos arrendatarios el negocio de hotel descrito en la parte expositiva de este instrumento, con todos sus usos y derechos, incluyendo el del uso al nombre de 'Hotel De Diego' con el valor o 'good will' que el mismo tiene en el mercado"; que el canon de arrendamiento "del establecimiento" es de $600 mensuales; que el arrendador "pagará

las contribuciones territoriales impuestas o que se impongan sobre los inmuebles en que ubica el negocio arrendado"; que los arrendatarios pagarán por los servicios de agua, luz y teléfono o cualquier otro servicio público "en relación con el negocio arrendado"; que las mejoras que "los arrendatarios introduzcan en los edificios y negocio arrendados quedarán a la terminación del contrato a beneficio del arrendador sin que éste tenga que pagar suma alguna en concepto de indemnización por las mismas, haciéndose constar que esto se refiere únicamente a las mejoras que no sean susceptibles de ser retiradas del edificio a la terminación del arrendamiento sin perjudicar la estructura del mismo o que por su propia naturaleza formen parte integrante de los inmuebles arrendados." En otras partes de la escritura se hace referencia al "negocio arrendado" y a los edificios "en que enclava [o ubica] el negocio arrendado", pero también se hace referencia a "los edificios arrendados". La cláusula décimoquinta dispone que "los arrendatarios podrán dedicar parte de los edificios arrendados a cualquier otra clase de negocio germano o en relación con el negocio de hotel, y se obligan a no efectuar cambio alguno en la estructura de los edificios en que ubica el negocio objeto de este arrendamiento sin el consentimiento por escrito del arrendador."

El mismo día en que se otorgó la escritura de "arrendamiento de negocio" ya mencionada, el arrendador y los arrendatarios otorgaron otra escritura de "Compraventa de Bienes Muebles" en que Vélez Posada le vendió a los arrendatarios todos los bienes muebles y mobiliario que estaban dentro del hotel, incluyendo sillas, almohadas, mesas y utensilios de cocina.

Varios meses después los arrendatarios originales otorgaron a favor del Dr. Basilio Dávila, como subarrendatario y comprador, una escritura de "Compraventa de Bienes Muebles y Subarrendamiento", con respecto al mismo hotel De Diego y los bienes muebles allí instalados.

En la vista del caso ante el Administrador declaró Vélez Posada que él compró el edificio e instaló allí un hotel, con las inversiones correspondientes, incluyendo el mobiliario de cada cuarto, instalaciones eléctricas de lámparas y timbres, anuncios del hotel; que al él arrendar "el negocio" se quedaron allí los mismos empleados; que "el negocio" tuvo éxito y adquirió "goodwill"; que los arrendatarios siguieron con la misma patente que él tenía hasta junio de 1948, y en esa fecha adquirieron una nueva patente a favor de ellos y continuaron el negocio de hotel; que al hacerse el arrendamiento el hotel era un negocio en funcionamiento; que los arrendatarios otorgaron fianzas, en nombre de ellos, por los servicios de agua, gas y teléfono; que gran parte del mobiliario del hotel fué vendido a los arrendatarios, pero las instalaciones eléctricas, incluyendo los timbres, fueron objeto del contrato de arrendamiento; que los arrendatarios no le pagaron a él nada por concepto de "goodwill" y que eso era parte del arrendamiento.

Entendemos y resolvemos que el anterior Administrador de Inquilinato tuvo una base racional en la prueba para decidir que el vínculo arrendaticio tuvo por objeto, primordialmente, el edificio en donde ubicaba el negocio de hotel, y no el negocio en sí, independientemente del edificio. El criterio administrativo no debe ser suplantado por el punto de vista judicial, a menos que no se demuestre la ausencia de elementos de prueba que, razonablemente, pudiesen sostener el dictamen del Administrador. Ahora bien, es cierto que las partes en el contrato original de arrendamiento, en repetidas ocasiones, se refirieron expresamente al "negocio de hotel" como objeto del arrendamiento. Naturalmente, para calificar la naturaleza de la relación, son muy importantes las expresiones de las propias partes. Pero ellas no constituyen el único factor exclusivo en la determinación del contenido real del objeto del arrendamiento. Son excepcionalmente relevantes, pero no son definitivamente decisivas. A los fines de la comprobación de si se trata de la

cesión arrendaticia de un local para negocio o de un negocio independiente en sí, el contrato no queda calificado únicamente por la nominación de las partes, sino por su fondo o contenido real. Ildefonso Bellón Gómez, Magistrado del Tribunal Supremo de España, en su obra Régimen Legal de los Arrendamientos Urbanos, pág. 33. Un resultado contrario permitiría a las partes el caracterizar artificialmente la naturaleza de la relación, en forma contraria a la realidad, a los fines de privar al Administrador del ejercicio legítimo de sus funciones y poderes legales. Las marcas o señales adoptadas por las partes podrían derrotar y hacer inefectivo el ámbito de acción del Administrador, bajo la ley. Procede determinar la realidad del contenido de la relación, de acuerdo con la prueba presentada. En el caso de *Orsini* v. *Sánchez*, supra, al resolverse que se trataba del arrendamiento de un negocio y no de un local para negocio, se indicó que el edificio era solamente incidental al negocio de estación de gasolina. Esa no es la situación en cuanto a un hotel. En este caso el edificio no solamente es parte integrante del negocio de hotel, sino que constituye su base esencial. El negocio no puede desconectarse de la estructura. El hotel se define en forma más relevante por la edificación y las habitaciones en él contenidas, que por los bienes muebles, enseres, utensilios y artefactos contenidos en el edificio. En una estación de gasolina la utilidad económica productiva se deriva del uso de los utensilios y bienes localizados en la estructura. En un hotel la productividad mercantil surge del edificio en sí. El edificio no es un órgano incidental sino que más bien sirve de nervio vital del negocio.

En el caso de *Orsini* los bienes muebles, utensilios y artefactos utilizados directamente en el negocio fueron objeto del contrato de arrendamiento. Al arrendarse los objetos que formaban parte integrante del negocio, se estaba arrendando un negocio. En el caso de autos no se arrendaron los utensilios y el mobiliario. Fueron vendidos abso-

lutamente a los arrendatarios. Lo que se arrendó fué solamente el edificio en sí, con las instalaciones eléctricas. El arrendamiento fué del local, y no exclusivamente de un negocio independiente del local. La diferencia entre ambos puede medirse por algunos conceptos, tal como ellos son señalados en la obra citada Régimen Legal de Arrendamientos Urbanos, a las págs. 28 a 30. El arrendamiento de un negocio surge del arrendamiento de bienes muebles que formen "un patrimonio con vida propia, en explotación, con valor económico independiente, en producción activa . . . y ese negocio ha de tener realidad por sí, con propia vida e independencia (del edificio) para bastarse a sí mismo." Para que sea el arrendamiento de un negocio, y no de un local para negocio, el arrendador debe entregar, en arrendamiento, "cuantos elementos sean necesarios para su normal explotación, y de faltar algunos de éstos, estará fuera del caso". El arrendamiento de un negocio independiente envuelve "un complejo de elementos materiales adecuados entre sí, destinados a un uso industrial y aptos para funcionar coordinadamente, o sea, una unidad patrimonial organizada a fin productor." Tales definiciones cubren el caso del arrendamiento de una estación de gasolina en que se arriendan los objetos y artefactos utilizados en la estación, pero no son relevantes al caso del arrendamiento de un hotel, limitado al edificio y a las instalaciones eléctricas, sin incluir en el arrendamiento el mobiliario, enseres y bienes muebles utilizados en el funcionamiento del hotel.

■ Se alega que el arrendamiento incluía el "goodwill" del hotel, y que ello implica que se cedió en arrendamiento un negocio. Pero ese "goodwill", en un hotel, puede estar adherido al edificio en sí, y no solamente al negocio en sí, como unidad patrimonial independiente.

■ La decisión del Administrador está sostenida por las disposiciones de la Ley de Alquileres Razonables y por el Reglamento de Inquilinato para Locales Comerciales, el

cual tiene fuerza de ley. El inciso (b) (10) del artículo 1 del Reglamento dispone, en parte, que el término "local comercial" significa toda estructura arrendada para fines de comercio o industria, incluyendo, entre otros, hoteles y casas de hospedaje. Tal disposición reglamentaria no es contraria a la ley. El artículo 22 de la ley dispone, en parte, que "local de negocio" incluye todo local o edificación que se use para negocios. El artículo 4 de la ley dispone, en parte, que "Tampoco se aplicarán las disposiciones de esta Ley a hoteles ni casas de hospedaje en cuanto a la relación entre quien explota dicho negocio de hotel o casa de hospedaje y sus huéspedes o inquilinos." Al exceptuar del ámbito de la ley la relación entre el dueño del hotel y sus huéspedes o inquilinos, ello implica que la relación arrendaticia del dueño con otras personas que no sean huéspedes, como, por ejemplo, con los arrendatarios en este caso, está cubierta por la ley.

Habiendo actuado correctamente el anterior Administrador de Inquilinato al resolver que se trataba del arrendamiento de un local para negocio, y no de un negocio, y por lo tanto, al actuar con respecto al canon de arrendamiento, *debe anularse y dejarse sin efecto la sentencia dictada por la Sala de San Juan del Tribunal Superior y, en su lugar, debe dictarse sentencia confirmando la resolución del anterior Administrador de Inquilinato.*

El Juez Asociado Sr. Marrèro no intervino.