FERMÍN y EDUARDO RIERA y ANITA y ORLANDO CARLO, peticionarios, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. RAMÓN CANCIO, JUEZ, demandado; EL ADMINISTRADOR DE ESTABILIZACIÓN ECONÓMICA DE PUERTO RICO, interventor.

Número 2163.

*Sometido:* 11 de junio de 1955. *Resuelto:* 5 de septiembre de 1956.

*Luis A. Catoni Antonetti* y *Rubén Gaztambide Arrillaga,* abogados de los peticionarios; *Juan T. Peñagarícano, Carlos Coll Carpintero* y *José T. Marrero Rivera,* abogados del interventor.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

La cuestión que se plantea en este recurso es si la Ley de Alquileres Razonables (17 L.P.R.A. sec. 181 y sigtes.) es aplicable al arrendamiento de un solar urbano baldío que el arrendatario usa exclusivamente para el estacionamiento y venta de automóviles y en el cual no radica ningún *"local o edificio".* Creemos que el Tribunal Superior cometió error al resolver que dicho contrato de arrendamiento se halla comprendido en las normas especiales que establece la referida ley.

A fines de 1950 y a principios de 1951, la Mayagüez Motor Corporation arrendó dos solares contiguos en la ciudad de Mayagüez, uno perteneciente a los hermanos Riera y el otro a los hermanos Carlo. Ambos eran solares baldíos con una cabida de 721.60 metros cuadrados cada uno. Se

convino en los contratos de arriendo (1) que el canon mensual sería de $90; (2) que el solar sería cercado con postes de hierro y alambrada por cuenta del arrendatario; y (3) que al expirar el término del contrato dicha cerca y las demás mejoras "quedarían de la propiedad del arrendador sin obligación de pagar indemnización alguna por ellas". La arrendataria construyó la referida cerca abarcando los dos solares, y además un pequeño kiosco abierto de madera con techo de zinc sobre el solar de los hermanos Riera. A fines de 1952 el Administrador de Estabilización Económica, a instancias de la arrendataria, reajustó los cánones de dichos solares rebajándolos de $90 a $45.75. Posteriormente, el 11 de septiembre de 1953, se dictaron dos "órdenes administrativas de descontrol": resolviendo que las propiedades objeto de los arrendamientos aludidos no estaban incluídos en las disposiciones del art. 4 de la Ley de Alquileres Razonables y declarando nulas las órdenes anteriores.

Las órdenes de descontrol se fundaron en las siguientes determinaciones de hecho que hizo el oficial de audiencia a base de la prueba presentada por las partes en el curso de una vista administrativa:

"1. En el solar Carlo no radica local o edificio de ninguna índole, pero el solar está rodeado parcialmente por un "cyclone fence" levantada por el inquilino, la cual tiene postes para alumbrado. El solar ha sido rellenado con cascajo. El inquilino, corporación dedicada al negocio de venta de automóviles, lo dedica a estacionamiento de vehículos nuevos y usados. Este solar está contiguo al solar Riera. Ambos solares adyacentes son usados por el inquilino conjuntamente, es decir, para el propósito del uso dádoles, físicamente constituyen una sola parcela o unidad.

"2. En el solar Riera hay enclavado un pequeño kiosco o galpón abierto, construído por el inquilino. En él hay una silla de lona y madera, y una mesita, además un cargador de baterías. No hay escritorio, ni material, ni equipo de oficina. Este solar está cercado igual que el Carlo por la misma verja.

"3. Las oficinas del inquilino están situadas en un local no contiguo, pero cercano a estos solares en la manzana enfrente. Ambos solares fueron tomados en arrendamiento por el inquilino por su cercanía al negocio.

"4. El techado del kiosco protege contra la lluvia a las personas que momentáneamente se encuentran en los solares. Igualmente podría la silla en el kiosco incidentalmente hacer más cómoda la labor de los "salesmen" que acompañen a los interesados en examinar los automóviles en el solar, para en aquellos casos en que se efectúe un convenio sobre el terreno, llenar facturas preliminares de ventas de automóviles. (Ninguna transacción que se efectúe sería obligatoria para el inquilino hasta que el General Manager no imparta su aprobación.)

"5. El kiosco no es necesario para el desenvolvimiento del negocio del inquilino; no es un local comercial; no es una oficina; no hay en él habitualmente o regularmente ningún empleado o agente del inquilino; es a lo sumo accesorio al uso del solar."

Después de oír a las partes sobre una moción de reconsideración, el Administrador finalmente dictó el 16 de noviembre de 1953 una resolución que lee como sigue:

"El 11 de septiembre de 1953 esta Administración dictó órdenes decretando el descontrol de los solares propiedad de la Sucn. Carlo, Eduardo y Fermín Riera, sitos en el Boulevard Santiago Veve de Mayagüez, Puerto Rico, ocupados por Mayagüez Motors Corporation. Se hizo tal determinación en cuanto al solar de los Hermanos Riera por entender la Administración que la caseta ubicada en dicho solar no constituía un edificio o local para fines comerciales o industriales. En cuanto al solar de la Sucesión Carlo se determinó que en este solar no radica ningún local o edificio perteneciente al inquilino o persona distinta al dueño del solar.

"De las órdenes de septiembre 11 de 1953 se solicitó reconsideración por el inquilino, Mayagüez Motors Corporation. La solicitud de reconsideración está fechada 21 de septiembre de 1953.

"Con el fin de oír a las partes sobre dicha Moción de Reconsideración se celebró una vista pública el día 28 de octubre de 1953 . . . La argumentación en este caso giró alrededor de si la edificación en el solar de los Hermanos Riera constituye

una estructura para los efectos de determinar si dicho solar está o no cubierto bajo la definición del artículo 1 párrafo (b) 10 del Reglamento de Inquilinato para Locales Comerciales. También argumentó el abogado de los propietarios que asumiéndose que se determinase que la caseta en el solar de los Hermanos Riera constituye una estructura haría que uno de los solares estuviese cubierto por la Ley de Alquileres Razonables y el otro no. A esta alegación podemos contestar que habiéndose convertido los dos solares en una sola unidad rental, la determinación que se haga en cuanto a un solar cubre el otro. Se eliminó la verja que existía entre los dos solares y se cercaron los dos solares con una verja de alambre del tipo "cyclone" con bases de cemento. Todo esto con el consentimiento de los propietarios. Esta cerca abarca los dos solares en una sola unidad con un portón por donde entran y salen los vehículos que se estacionan en los solares. (Véase declaración del Sr. Fermín Riera en la vista celebrada el 12 de mayo de 1953.)

"El Administrador después de considerar detenidamente la prueba presentada en este caso, bajo la autoridad que le confiere la Ley 464 de abril 25 de 1946 y la Ley 97 de junio 19 de 1953, por la presente revoca sus órdenes de septiembre 11 de 1953, bajo las cuales se decretó el descontrol de los solares propiedad de la Sucn. Carlo y Hermanos Riera, ocupados por Mayagüez Motors Corporation. El alquiler máximo para cada uno de dichos solares será $45.75 por mes según órdenes de diciembre 27 de 1952."

▓▓ Las disposiciones de la Ley de Alquileres Razonables se aplican a las siguientes clases de "propiedades de alquiler", en virtud de las disposiciones expresas del art. 4 (17 L.P.R.A. sec. 184):

"(a) Edificios y locales para negocios, despachos y consultorios profesionales, oficinas y propósitos comerciales e industriales, y solares en que radiquen tales locales o edificios, si éstos pertenecen a distinto dueño.

"(b) Casas, apartamientos y caseríos destinados a vivienda.

"(c) Solares en que radican viviendas pertenecientes a otras personas.

"(d) Casas y edificios arrendados al Gobierno de Puerto Rico, a sus agencias e instrumentalidades, a corporaciones pú-

blicas, al Gobierno de la Capital y a los gobiernos municipales de Puerto Rico."

La definición de lo que constituye *"propiedad de alquiler"* establece que dicho término incluye "casa, habitación, apartamiento y caserío destinados a viviendas, y cualquier parte de los mismos; solar en que radiquen una o más viviendas pertenecientes a personas distintas al dueño del solar, y casa y edificación que se use en todo o en parte para negocios, oficinas profesionales, o propósitos comerciales o industriales." (17 L.P.R.A. sec. 212). Además, el art. 1 (*b*) (10) del Reglamento de Inquilinato para locales comerciales define el término *"local comercial"* como "toda estructura o parte de una estructura arrendada para fines de comercio, negocio o industria . . . así como también solares en los cuales están enclavadas estructuras dedicadas a tales fines y que pertenezcan a dueño distinto al del solar".

Aparentemente la resolución final del Administrador en el caso de autos se basa en que el pequeño kiosco construído sobre el solar de los hermanos Riera constituye un *"local o edificio"* para negocio y que la cerca de alambre convirtió a los dos solares en "una sola unidad rental" a la que se aplica la ley porque en uno de los solares está enclavado dicho kiosco. El Tribunal Superior, sin embargo, resolvió la cuestión jurisdiccional sobre una base enteramente distinta, a saber, que la Ley de Alquileres Razonables se aplica a un solar arrendado para fines comerciales aunque en el solar no haya ningún edificio o local.[1]

Tanto el criterio del Administrador como el del Tribunal Superior son erróneos. El concepto de solar como objeto de

---

[1] En su opinión expresó que ". . . a nuestro juicio la ley es aplicable a un solar arrendado para fines de comercio aunque en el solar no haya estructura alguna . . . En el presente caso nos limitamos a resolver que dadas las circunstancias del mismo—o sea, que es un hecho aceptado y que nunca ha estado en controversia que los recurrentes dieron sus respectivos solares en arrendamiento a la Mayagüez Motors Corporation y que ésta los dedica a su negocio de venta de automóviles— no era necesario que el Administrador expresamente concluyera que en los dos solares hay un 'local de comercio'."

la relación arrendaticia se diferencia claramente del de un local o edificio para vivienda o para negocio. Ya hemos resuelto que la Ley de Alquileres Razonables no se aplica al arrendamiento de una finca rústica. *Igartúa* v. *Ruiz*, 73 D.P.R. 354 (1952). Es evidente también que un solar sin local o edificación alguno no está sujeto a la Ley de Alquileres Razonables aunque se encuentre en la zona urbana y se dedique a fines comerciales o industriales. Los únicos solares que están sujetos a la Ley de Alquileres Razonables son aquellos en que radican *edificios o locales* para negocios, si éstos pertenecen a distinto dueño, y aquellos en que radican *viviendas* pertenecientes a otras personas. (2) Aun el Administrador en su Reglamento (artículo 1) al definir los términos "propiedad de alquiler" y "local comercial" excluyó expresamente a los solares en que no enclavan locales o edificaciones. (3) Y la definición de "local de negocio" que aparece en el art. 22 de la Ley también se refiere expresamente a un *local o edificio* que se use para negocios, etc. En resumen: es obvio que la Ley de Alquileres Razonables no se refiere a los contratos de arriendo que recaigan sobre solares baldíos en que no exista ningún edificio o local, aunque dichos solares se usen para fines comerciales o industriales.

■■ Por otro lado, como cuestión de derecho, la construcción de una cerca y de un pequeño kiosco o cobertizo sobre uno de los solares objeto de los arrendamientos celebrados por las partes, no constituye un "edificio o local para negocios" dentro de las circunstancias que concurren en el caso de autos. En primer lugar, el objeto de cada uno de

---

(2) Véase la exposición de motivos de la referida ley. (17 L.P.R.A. sec. 181). Además 17 L.P.R.A. secs. 184 y 212.

(3) Dicho artículo estaba en vigor cuando se ventiló este caso. Pero el tribunal a quo concluyó, sin embargo, que el mismo podía ser dejado sin efecto o enmendado cuasijudicialmente, es decir, en el caso específico de los dos solares aquí envueltos. En *Mejías* v. *Tribunal Superior*, 75 D.P.R. 447, 455 (1953), refiriéndonos a dicha disposición del Reglamento, resolvimos que la misma era válida y se ajustaba a las disposiciones de los arts. 4 y 22 de la Ley.

los arrendamientos fué un solar sin edificación de clase alguna para ser dedicado al estacionamiento de automóviles que la arrendataria tenía para la venta. En segundo lugar, dicho kiosco no convierte a los solares en "propiedad de alquiler" porque (1) los "edificios o locales para negocios" que contempla la Ley de Alquileres Razonables son estructuras o edificaciones que, de modo fundamental, sean usadas en el ejercicio de una actividad industrial o comercial, y (2) la construcción que hizo la arrendataria sobre· uno de los dos solares es de carácter provisional, de reducido tamaño, de escaso valor y se utiliza en forma obviamente accesoria al negocio que se explota en los solares baldíos.(⁴) Es decir, el vínculo arrendaticio aquí no se estableció sobre ningún género de edificaciones sino sobre dos solares para depositar sobre su superficie los automóviles que la arrendataria tenía para la venta y sobre todo, teniendo en cuenta las demás circunstancias antes señaladas, el hecho de que la arrendataria construyó allí un kiosco no hace aplicables las disposiciones de la Ley de Alquileres Razonables a los contratos de arrendamiento envueltos en este caso. Cf. *Orsini* v. *Sánchez*, 67 D.P.R. 863 (1947); *Mejías* v. *Tribunal Superior*, 75 D.P.R. 447 (1953); *Talbert* v. *Hilton Hotels*, 78 D.P.R. 283 (1955); *In re McGrath*, 58 N.Y.S.2d 876 (1945); Friedlander y Curreri, *Rent Control*, (1948) sec. 116; 28 Jurisprudencia Civil (2a. s.) 335 (1949); 29 Jurisprudencia Civil (2a. s.) 508 (1950).(⁵)

*Debe anularse la sentencia recurrida y devolverse el caso al tribunal a quo para procedimientos que sean consistentes con esta opinión.*

---

(¹) De acuerdo con la prueba que consta en autos, el cobertizo o kiosco abierto es de madera con techo de zinc y mide diez pies de frente por doce pies de fondo.

(⁵) Conviene repetir aquí lo que indicamos en *La Costa* v. *Tribl. de Distrito*, 67 D.P.R. 171, 173: "Tal vez esos inquilinos deban tener la misma protección que la Ley 464 extiende a los otros. Pero no podemos negarnos a seguir el claro lenguaje del estatuto. El remedio, de ser alguno necesario, descansa en las manos de la Legislatura."