CARLOS S. APARICIO, demandante y recurrente, *v.* JUAN T. PEÑAGARÍCANO, en su carácter de Administrador de Estabilización Económica de Puerto Rico, demandado y recurrido.

*Número:* 86    *Resuelto:* 19 de enero de 1962

402

*Montilla & Benítez,* abogados del recurrente; *Víctor M. Marchand, Nieves M. Agostini de Torres* y *Miguel Franquiz Ventura,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En primero de octubre de 1942 la tercera planta de la casa núm. 351 de la Calle Salvador Brau de San Juan era una unidad de vivienda de once habitaciones dormitorio, sala, comedor, cocina y cuarto de baño y se pagaba un alquiler de $65 por mes. En el año 1955 esta tercera planta fue convertida, mediante la correspondiente inversión, en cuatro unidades de vivienda separadas, de distintos tamaños, con sus cocinas, servicios sanitarios y una escalera adicional. Se arrendaron por las sumas de $40, $23, $30 y $90 por mes.

La queja de un inquilino por el estado de la vivienda que ocupaba motivó una investigación y el 19 de febrero de 1960 el Administrador de Estabilización Económica fijó cánones razonables de $18.60; $10.15; $12.75 y $53.50 respectivamente. Al fijar dichos cánones dictó resolución haciendo constar que el casero había habilitado el mismo espacio de la planta original en cuatro viviendas llevando a cabo las mejoras correspondientes para dicha obra y había invertido la suma de $3,578.77 conjuntamente en las obras de la tercera planta y obras en otra planta. Concluyó el Administrador que no había habido adición de espacio ni reconstrucción que ameritara que se fijaran cánones a base de costo de construcción, por lo que procedía que siguiera el criterio de comparación de acuerdo con las disposiciones de la Ley de Alquileres Razonables tomando en consideración las mejoras efectuadas, y teniendo la unidad de alquiler un canon de congelación, aplicaba lo dispuesto en la sección 8 del Reglamento de Inquilinato en vigor. Posteriormente, en 14 de marzo de 1960 el Administrador dictó otra resolución haciendo constar que la referencia al criterio de comparación había sido insertada por inadvertencia, ya que no correspondía a la norma utilizada que fijó el canon a base de la parte proporcional que le correspondía a cada una de dichas viviendas separadas en el alquiler de congelación para el espacio total,

más lo invertido por el propietario en las segregaciones verificadas.

En 26 de mayo de 1960 el Administrador emitió órdenes de reembolso como consecuencia de los cánones menores fijados por él, cubriendo dichas órdenes todo el período desde que las viviendas habían sido ocupadas. [1]

Cuando a partir de 1955 el casero fijó los cánones que los inquilinos venían pagando, regía la Orden Administrativa núm. 5 promulgada por el Administrador el 1ro. de septiembre de 1948. Dicha Orden Administrativa disponía que a partir de la vigencia de la misma y hasta tanto el Administrador determinara otra cosa, el alquiler máximo de una vivienda sería:

A.—Para las viviendas terminadas de construir en o antes del 1ro. de octubre de 1942:

(1) El último alquiler fijádole bajo el programa de control federal de alquileres si la vivienda estuvo sujeta a dicho control; o

(2) El alquiler que se cobraba el 1ro. de octubre de 1942 si la vivienda estuvo arrendada en dicha fecha; o

(3) En defecto de lo dispuesto en los apartados (1) y (2) anteriores, regiría el primer alquiler cobrado después del 1ro. de octubre de 1942 si la vivienda fue arrendada con posterioridad a esa fecha; o

(4) Si la vivienda había sido objeto de un *cambio o mejora fundamental* con posterioridad a las fechas referidas en los incisos (1) al (3), regiría el primer alquiler cobrado después de dicho *cambio o mejora fundamental*.

En cuanto a viviendas terminadas de construir después del 1ro. de octubre de 1942 se dispuso:

---

[1] Se ordenó un reembolso a Georgina Córdova de $406.60 por un sobreprecio de $21.40 durante 19 mensualidades; a Guillermo Gallardo de $269.85 por un sobreprecio de $12.85 durante 21 mensualidades; a Frank Figueroa de $1,026.38 por un sobreprecio de $17.25 durante 59½ mensualidades y a Fanny F. de Freche de $255.50 por un sobreprecio de $36.50 durante 7 mensualidades. Total—$1,958.33.

(1) Que el alquiler máximo sería el último alquiler fijádole bajo el programa de control federal de alquileres si la vivienda estuvo sujeta a dicho control; o

(2) El alquiler cobrado al arrendarse por primera vez; o

(3) Si la vivienda fue objeto de un *cambio o mejora fundamental* posterior a las fechas referidas en los incisos (1) y (2), regiría el primer alquiler cobrado después de dicho *cambio o mejora.*

Dispuso la referida Orden Administrativa que el alquiler máximo que resultara de lo estatuido anteriormente podría ser modificado por el Administrador a petición del casero o inquilino, o a iniciativa propia, por cualesquiera de las causas contenidas en el Artículo 5 del Reglamento de Inquilinato para Locales Comerciales, excepto lo dispuesto en el Art. 5a(6) del mismo.(²)   La Orden Administrativa adoptó la definición de "vivienda" estatuida en el Art. 22 de la Ley de Alquileres Razonables, que incluye albergue, alojamiento, habitación, casa y edificio, o una parte de los mismos destinada al albergue o alojamiento.

Al fijar los cánones razonables de estas viviendas el Administrador actuó a base de lo dispuesto en la sección 8 del Reglamento de Inquilinato de 12 de enero de 1959—17 R. & R. P. R., sec. 186-8,—la cual dispone:

"(a) Si la unidad antes de segregarse tenía un alquiler máximo, la renta para las unidades resultantes se fijará en proporción al área de la unidad segregada y de su localización con la del total de la unidad original.

"(b) Cuando para lograr la segregación el casero hace una inversión, el alquiler máximo se determinará a base del alquiler

---

(²) El Art. 5a(6) se refería a un aumento de alquiler a base de la importancia de la zona comercial en donde enclava el local comercial o del coste de construcción del mismo de ser una construcción reciente.   Entre los motivos para aumentar el alquiler máximo incluye dicho art. 5 la mejora capital distinta a actos de mera conservación o reparación ordinaria y el alquiler máximo no refleja dicha mejora, entendiéndose por ésta aquella que resulta en una adición estructural, un mejoramiento estructural o una rehabilitación completa.

resultante en el inciso (a), más una cantidad que no excederá del 12% anual de la inversión."

El casero acudió al Tribunal Superior en revisión de las órdenes dictadas. A tenor de las anteriores disposiciones reglamentarias, la Sala sentenciadora sostuvo el método usado por el Administrador para fijar el alquiler razonable, pero anuló los reembolsos ordenados retroactivamente y devolvió el caso para determinadas actuaciones administrativas. No obstante, en reconsideración sostuvo las órdenes en cuanto a los reembolsos decretados. Fue de opinión la Sala sentenciadora que no se había aplicado retroactivamente el Reglamento de Inquilinato de 12 de enero de 1959 por cuanto la fijación de estos cánones ocurrió con posterioridad, y entendió que los alquileres fijados se ajustaban *automáticamente* al primero de octubre de 1942, y por consiguiente, los inquilinos tenían derecho a ser reembolsados del exceso. Para revisar este fallo expedimos certiorari.

En lo aquí pertinente, el Art. 6 de la Ley de Alquileres Razonables, Ley 464 de 25 de abril de 1946 según ha sido enmendada—17 L.P.R.A. (Ed. 1961) sec. 186,—dispone con la mayor sencillez lo referente a la fijación de alquileres razonables:

1.—Excepto en la forma dispuesta en el Art. 6, y mientras no sea alterado por el Administrador de acuerdo con las facultades que le confiere dicho artículo, se prohibe cobrar un alquiler mayor del que se pagaba el 1ro. de octubre de 1942 declarado "alquiler básico".

2.—El Administrador tiene poderes para fijar un alquiler razonable decretando aumentos o rebajas en el alquiler prevaleciente en aquellos casos en que a su juicio así se justifique por razón de *mejoras de importancia capital,* . . . etc. . . Ningún aumento que se autorice excederá el alquiler fijado en más de un 15%, excepto para ciertos edificios ubicados en la zona antigua o histórica de San Juan.

3.—Si la vivienda o edificación no hubiere estado arrendada en 1ro. de octubre de 1942, el Administrador fijará el alquiler razonable sobre la base de los alquileres que *prevalecían* en Puerto Rico *para viviendas y edificios similares* durante el año que terminó el 1ro. de octubre de 1942.

4.—Si la vivienda o edificación es de construcción posterior al 1ro. de octubre de 1942, el Administrador fijará el alquiler razonable sobre la base del *coste* de construcción de dicha vivienda o edificio, entendiéndose que en ningún caso el alquiler razonable, computado por una anualidad, podrá exceder del 12% del coste de la obra.

5.—Cuando el Administrador ajusta el alquiler que se pagaba antes de la vigencia del Art. 6 o dicta una orden final fijando el alquiler razonable según en dicho artículo se determina, el inquilino sólo está obligado a pagar el alquiler básico o el razonable que fuere fijado, *pero no tiene derecho a reembolso por lo pagado en exceso del alquiler razonable con anterioridad a la fecha en que éste se fija,* salvo en los casos en que por disposición expresa de la ley el alquiler se ajusta *automáticamente* al canon prevaleciente el 1ro. de octubre de 1942, y salvo aquellos otros casos en que el Administrador dicta una orden provisional aumentando o fijando el alquiler máximo hasta que el caso queda resuelto, pero el reembolso sería sólo de aquella parte del alquiler provisional que resultare en exceso del alquiler finalmente fijado. ■

La situación que presenta este caso no provista expresamente en el Art. 6 de la ley a tenor del tratamiento *de hecho* que le dio el Administrador, nos lleva a concluir que después que la vivienda de 1942 fue convertida en cuatro viviendas separadas con la correspondiente inversión, según el Administrador concluyó, el primer alquiler fijado por el casero a partir de dicha conversión y mientras no se modificó por el Administrador era un alquiler permisible bajo las disposiciones de la Orden Administrativa Núm. 5. ■

Todo alquiler razonable es en sí por disposición de la ley de carácter *prospectivo*, tanto para el propietario como para el inquilino. En *Peñagarícano* v. *Tribunal* y *Nadal Skerret*, 81 D.P.R. 877, rechazamos aunque sin poder corregir la aplicación retroactiva por el Administrador, para beneficio del casero, de un alquiler razonable mayor que el básico. Cuando el alquiler razonable se fija en cantidad menor que el que se pagaba, para beneficio del inquilino, también tiene efecto prospectivo, excepto cuando se hubiere fijado un canon provisional, en que se retrotrae a la fecha del canon provisional con reembolso del exceso del *provisional* sobre el alquiler finalmente fijado. Si hasta el momento en que el Administrador fija un alquiler razonable alterando el básico se hubiere estado pagando un canon en exceso de éste, hay un caso de ajuste *automático* ya que la ley prohibe cobrar un alquiler mayor del básico mientras éste no fuere alterado por el Administrador. Igualmente, si el Administrador determina que no ha ocurrido hecho alguno de los que especifica la ley para alterar el básico y fija éste como el que debió pagarse, hay también el ajuste automático que da derecho a reembolso de cualquier exceso sobre el básico. El concepto de ajuste automático, *a los efectos del reembolso*, se refiere al alquiler que en exceso del básico se ha estado cobrando hasta que se fija el razonable por el Administrador. No es un ajuste, como entendió la Sala sentenciadora en este caso, del alquiler razonable fijado en relación con el básico, porque entonces se crearía la situación que rechazamos en *Nadal*, y de hecho se anularía la prohibición de ley de cobrar un alquiler en exceso del básico antes de que éste sea alterado.

En el caso de *Nadal Skerret* resolvimos que había un ajuste automático, no entre el alquiler razonable que se fijó mayor del básico al cual le negamos efecto retroactivo, sino entre el básico y el que se estaba cobrando. Sus hechos son claramente distinguibles de los del caso presente. En aquel, se cobraba un canon en franca violación del alquiler básico

sin que las viviendas hubieran sufrido cambio o modificación alguno. Cuando los inquilinos pidieron rebaja, el casero, a manera de contraataque, solicitó una alteración del canon básico que hasta cierta cantidad obtuvo a su favor, aunque no hasta cubrir la cuantía total del alquiler que ilegalmente cobraba. Al momento en que el Administrador modificó aquel canon se había estado cobrando un alquiler en violación de la ley siendo un caso claro de ajuste automático que daba derecho a un reembolso. Aquí, por el contrario, se produjo un cambio en la situación prevaleciente en octubre de 1942 al extremo de surgir varias unidades separadas de vivienda con fisonomía y características propias que podrían, inclusive, considerarse como unidades de vivienda no existentes en 1942 en el mercado de alquileres. [3]

Asumiendo que la Orden Administrativa estuviera en conflicto con la Ley 464, según indica el propio Administrador, aún así bajo sus hechos particulares este caso no presentaría una situación de ajuste automático, no estando tal situación de hecho expresamente provista por ley. Bajo el propio Reglamento de Inquilinato de 1959 invocado por el Administrador se dispone en la Sección 186-5(b) que en caso de unidades de alquiler ubicadas en estructuras construidas con anterioridad al 1ro. de octubre de 1942 que no hubieren estado arrendadas para esa fecha, el alquiler máximo será el primer alquiler cobrado después de dicha fecha . . ., y que el Administrador podrá revisar el mismo sobre la base de los alquileres que prevalecían en Puerto Rico para viviendas o locales similares durante el año que terminó el 1ro. de octubre de 1942. Los inquilinos pudieron haber solicitado del Administrador, y éste ordenar, una pronta revisión del canon cobrado

---

(3) Compárese, por vía de ilustración, la situación de hecho que presentan los siguientes casos: *Gregory* v. *Barr*, (U. S. E. C. A., 1953) 203 F.2d 364; *Woods* v. *Macken*, (C. A. 5, 1949) 178 F.2d 510; *Pinkerton* v. *Solis* (Pa. Super. 1951) 82 A.2d 525; *Banko* v. *Krist* (Ill. App. 1952) 104 N.E.2d 641; *United States* v. *Marsh*, (D. C., Ind., 1956) 142 F. Supp. 686; *United States* v. *Price*, (D. C., Ken., 1952) 108 F. Supp. 497; *United States* v. *Beatty*, (D. C. Iowa, 1949) 88 F. Supp. 791.

en estas viviendas separadas, y no pueden quejarse si por su propia indiferencia no se estableciera antes un alquiler razonable menor. ■

A distinción de la Orden Administrativa Núm. 5, el nuevo Reglamento proveyó de manera específica para una situación como la del caso de autos.—Sección 186-6(a)(b). No discutimos el derecho del Administrador de sustituir su propia reglamentación por otra que a su juicio responda a normas más satisfactorias para él en el descargo de su responsabilidad de administrar la ley. Pero habiendo derechos de propiedad de por medio, sus reglamentos crean estado de derecho que protege a los que actúan bajo sus disposiciones a menos que se trate de reglamentación nula *per se*. Los cambios de naturaleza sustantiva sólo han de tener efecto prospectivo. La Sala sentenciadora debió haber anulado, como primeramente lo hizo, las órdenes de reembolso por no ser éste bajo sus hechos un caso de ajuste automático del canon cobrado con el que prevalecía en octubre de 1942. ■

La segunda cuestión que plantea este recurso nos lleva a considerar la norma que siguió el Administrador al fijar el alquiler razonable de estas viviendas a tenor de la Sección 8-6(a)(b) del Reglamento de Inquilinato de 12 de enero de 1959, el cual derogó la Orden Administrativa Núm. 5. El recurrente sostiene que el método usado es contrario a la ley.

Sólo existen los siguientes alquileres en materia de vivienda: (a) el "básico" o el alquiler que se pagaba el 1ro. de octubre de 1942; (b) el "básico" aumentado o rebajado por el Administrador por los motivos específicos expuestos en la ley. Un motivo para aumento es la mejora de importancia capital, pero el aumento que decrete el Administrador por ese, y otros motivos permisibles, no excederá del 15% del canon fijado excepto en los casos de la zona histórica; (c) un alquiler determinado por el Administrador a base de comparación con el que pagaba una vivienda similar durante el año terminado en octubre 1ro. de 1942; (d) un alquiler

a base del costo de construcción hasta un máximo de un 12%
de dicho costo si la vivienda se construyó después del 1ro. de
octubre de 1942; (e) un alquiler razonable determinado por
el Administrador mayor del alquiler básico si éste no respon-
día al prevaleciente en 1942 para viviendas similares por
razón de parentesco u otras consideraciones especiales, y el
alquiler básico era sustancialmente más bajo; (f) un alquiler
razonable determinado por el Administrador mayor del básico
si la vivienda se amuebló después de 1942, caso éste en que
el aumento del Administrador debe ser en proporción al nú-
mero de habitaciones amuebladas y a la calidad del mobiliario;
(g) aunque no propiamente en el concepto de alquiler razo-
nable, el Legislador permitió cobrar un alquiler mayor del
básico si antes de octubre 1ro. de 1942 hubo una opción de
compra por el inquilino y el canon se aplica al precio de
venta. ■

Todo alquiler que se cobre o se autorice como razonable
debe responder a las anteriores normas y no a otra alguna.
El Administrador puede disponer por reglamento para situa-
ciones de hecho no provistas expresamente en la ley. No
obstante, todo alquiler que fije deberá responder a las normas
anteriormente expuestas ya que no existen en ley para estos
fines otros tipos de alquileres que los estatuidos en ella. La
ley no permite un tipo de alquiler fijado a base de aumentar
el canon básico hasta un *12%* de la cantidad que se hubiere
invertido en *separar* una vivienda.

El Administrador concluyó que en este caso no hubo la
construcción de una vivienda posterior a octubre de 1942. Se
le devuelve el asunto para que determine específicamente
como cuestión de hecho, a la luz de la prueba practicada y
de cualquiera prueba adicional que fuere necesaria, si el
casero realizó mejoras de importancia capital a una vivienda
arrendada en octubre 1ro. de 1942, o si por la naturaleza de
las obras realizadas y por la fisonomía propia que adquirieron
las viviendas aquí envueltas, las mismas no estaban arren-

dadas para esa fecha. Si concluye lo primero, el ajuste al canon básico no podrá exceder de un 15% excepto si se tratare de la excepción mencionada. Si lo segundo, deberá aplicar el criterio de comparación al alquiler que fije. En ausencia de una orden provisional, dicho alquiler tendrá efecto prospectivo tanto para el casero como para el inquilino.

*Se revoca la sentencia recurrida y se dictará otra anulando las órdenes de reembolso y ordenando a la Sala sentenciadora que devuelva el caso al Administrador para los procedimientos indicados.*