Sucesión de Antonio Bernat, peticionaria y recurrente, *v.* Juan T. Peñagarícano, Administrador de la Administración de Estabilización Económica, demandado y recurrido.

*Número:* 52   *Resuelto:* 19 de febrero de 1962

*Harry M. Besosa,* abogado de la peticionaria; *Víctor M. Marchand, Nieves Agostini de Torres* y *Miguel Franquiz Ventura,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En 30 de julio de 1959 el Administrador de Estabilización Económica dictó resolución fijando un canon mensual de $340.70 al segundo piso de la casa núm. 150 en la Calle Eugenio María de Hostos de Arecibo, dedicado dicho segundo

piso al negocio de hotel. Debido a deterioro existente el alquiler quedó rebajado de momento a $299 hasta que el deterioro fuera corregido, y de ahí en adelante se pagarían $340.70. Esta determinación del Administrador fue confirmada por la Sala de Arecibo del Tribunal Superior—Ley 464 de 1946 art. 7; 17 L.P.R.A. (ed. 1961) sec. 187,—y el asunto está ahora ante nos en revisión.

De acuerdo con el récord de la Administración, el asunto tiene el siguiente historial: La recurrente ocupa este local comercial como inquilina desde el año 1929 pagando un canon de $125 mensuales. El 1ro. de octubre de 1942 ese era el alquiler que se satisfacía. En diciembre de 1950 el alquiler se aumentó a $130.30 y en 1954 a $133.25. En 1957 se rebajó a $99.50 por razón de deterioro, siendo restituido a la suma anterior en marzo 14, 1958. A partir de octubre 1ro. de 1958 quedó rebajado de nuevo a $91.60 por existir deterioro sustancial en el local.

La actual. casera adquirió la propiedad en el año 1944 estando ya ocupada por la inquilina. En 12 de febrero de 1959 la casera solicitó del Administrador un aumento del alquiler alegando que el canon básico anterior de $125 se debía a la condición de amistad entre ella y su familia y la inquilina y su familia, a la determinación suya y de su esposo de no aumentarle el alquiler a la inquilina mientras ésta estuviera educando a sus hijos, y al agradecimiento que le tenían a la inquilina y su esposo por haberles éstos ayudado en la compra de la casa en 1944. Alegó que la situación al presente había cambiado porque la inquilina había enriquecido y prosperado, siendo dueña de otro negocio de hotel frente a la plaza principal de Arecibo. Después de los procedimientos de rigor y de celebrarse vistas en que fueron oidas las partes, el Administrador dictó la resolución a que nos hemos referido aumentando el alquiler a $340.70 reducido de inmediato a $299 hasta tanto se corrigiera cierto deterioro.

El Administrador fijó el canon de $340.70 de la siguiente manera: consideró los alquileres que se pagaban en diez lo-

cales comerciales sitos en la Calle De Diego de Arecibo con cabidas que fluctuaban entre 1,138 y 2,710 pies cuadrados. Este cálculo arrojó un monto de $957 de alquileres por 18,291 pies cuadrados de local, lo cual dio un coeficiente de .0523 por pie cuadrado. Teniendo el local aquí envuelto 6,514 pies cuadrados, a base de dicho coeficiente obtuvo un alquiler de $340.6822 ó $340.70 [1].

En sus conclusiones de hecho el Administrador expresó:

"Del examen de los documentos que figuran en todo el expediente, la Administración entiende que indudablemente *han tenido* que existir razones peculiares para haberse cedido esta propiedad en arrendamiento por $125.00 originalmente, máxime si se toma en consideración que la propiedad ofrece las siguientes comodidades:

23 habitaciones de dormitorio para dos personas cada una—4 cuartos de baño—4 servicios sanitarios—3 salas de espera—3 comedores—1 terraza laundry—1 cocina—2 escaleras con entrada y salida para dos calles—varios pasillos que unen las distintas dependencias—balcón corrido alrededor de la edificación.

La propiedad radica en el sitio más céntrico de Arecibo, o sea, frente al Cuartel de la Policía, a unos cien pies de la plaza de recreo, en el centro de la zona comercial, muy cerca de los centros de recreo lícitos, cerca de los Tribunales de justicia, a pocos pasos del Municipio, cercana a los Bancos Crédito y Ahorro Ponceño y National City Bank, así como el Banco de Ponce. El solar en que está enclavada la propiedad está valorado para fines contributivos en $23,720. La edificación para fines contributivos está valorada en $21,610, haciendo un total tributable de toda la propiedad de $45,330.00. La contribución anual es de $1,137.78. Según alegación de la casera la propiedad vale más de $50,000 irrespectivo del estado de deterioro. Según otra alegación de la

---

[1] La inquilina objetó que estos locales usados para la comparación estaban situados en una calle de mayor importancia comercial que la calle De Hostos. Excepto en lo que respecta a las cabidas, no surge del récord qué tipo de locales eran éstos, la clase de edificación que eran o el costo de edificarlos, las ventajas de funcionamiento que pudieran ofrecer, los negocios para los cuales se usaban y otros índices de *similitud* propios de comparación. Para resolver este caso no es necesario que entremos en ese aspecto, y asumiremos por lo tanto, sin resolverlo, la corrección del método usado para la fijación del monto del canon.

casera, la propiedad es objeto de ciertos gastos por los fines a que la dedica la inquilina, o sea, la explotación de un negocio de hotel."

Más adelante:

"Las circunstancias *peculiares* que mediaron para la fijación de canon en $125.00 han ya desaparecido y no sería equitativo sostener un canon tan bajo para una propiedad como la antes descrita."

Resolviendo una moción de reconsideración interpuesta por la inquilina, el Administrador manifestó:

"Del estudio de comparabilidad hecho por la Administración surge una disparidad muy notable entre la renta de locales similares a la renta de congelación, la Administración no debe ser demasiado estricta en cuanto a confirmación de las llamadas relaciones especiales. *La mejor demostración de su existencia debemos encontrarla en la diferencia entre las dos rentas.*" (Bastardillas nuestras.)

En su alegato ante nos el Administrador expuso su posición de derecho así:

"Esta Administración es muy cuidadosa generalmente en la alteración de cánones de congelación, pero en este caso creemos que servimos mejor los intereses de la justicia actuando como lo hicimos. Se trata de un inmueble que ofrece las siguientes comodidades:

23 habitaciones de dormitorio para dos personas cada una— 4 cuartos de baño—4 servicios sanitarios—3 salas de espera— 3 comedores—1 terraza laundry—1 cocina—2 escaleras con entrada y salida para dos calles—varios pasillos que unen las distintas dependencias—balcón corrido alrededor de la edificación— la propiedad radica en sitio céntrico de Arecibo, a unos cien pies de la plaza de recreo, en el centro de la zona comercial, muy cerca de los centros de recreo lícitos, de los tribunales de justicia y a varios bancos, con una tasación contributiva de $48,000.

Como aparece de los autos *era lógico inferir que alguna circunstancia peculiar tuvo que haber mediado* para la prevalencia de una renta de congelación tan baja." (Bastardillas nuestras.)

Aclaró que aunque el casero había alegado relaciones de parentesco, la razón que hubo fue la existencia de *circunstancias peculiares.* ■

El Art. 6 de la Ley de Alquileres Razonables—17 L.P.R.A. (ed. 1961) sec. 186—prohibe el cobro de un alquiler mayor del que se pagaba el 1ro. de octubre de 1942, excepto en la forma en que dicho artículo dispone. Se autorizó al Administrador a fijar un alquiler razonable decretando aumentos o rebajas en el prevaleciente, y se dispuso entre otras cosas que: "Si por razón de parentesco o de otras relaciones personales o especiales entre el propietario y el inquilino o debido a circunstancias peculiares, el alquiler devengado el primero de octubre de 1942 era substancialmente más bajo que el alquiler devengado en Puerto Rico por viviendas o edificaciones *similares* en esa misma fecha, el Administrador fijará, a instancia del propietario, el alquiler razonable conforme a las normas establecidas en esta Ley." ■

Hemos dicho y repetido que las determinaciones de hecho del Administrador de Estabilización Económica no han de ser dejadas sin efecto o alteradas por los tribunales si en el récord existe base sustancial para las mismas. *Ledesma, Admor.* v. *Tribunal,* 73 D.P.R. 396; *Mejías, Admor.* v. *Tribunal,* 75 D.P.R. 447; *Mejías* v. *Tribunal,* 79 D.P.R. 317; *García* v. *Tribunal Superior,* 82 D.P.R. 673. ■

Pero nada hay en el récord de este caso que demuestre que el canon de $125 que se pagaba el 1ro. de octubre de 1942,—y que por ministerio de la ley quedó fijado como el legalmente permisible hasta tanto fuera alterado o sustituido por el Administrador por los motivos que dispone la propia ley,—se debiera a la presencia de relación de parentesco u otras relaciones personales o especiales entre el propietario y el inquilino; o se debiera a la presencia de circunstancias peculiares que hicieran dicho canon sustancialmente más bajo que el devengado en esa .fecha por viviendas o edificaciones similares. Como cuestión de realidad el Administrador no estableció con

hechos la existencia de tales relaciones especiales o circunstancias peculiares, y no podía hacerlo tampoco por carencia de base en el récord.(²) ▪

Según se desprende de lo expresado por él, del hecho de que el canon de este local era mucho más bajo que el que pagaban los locales comerciales que utilizó para comparar, el Administrador hizo la inferencia, también de hecho, de que habían existido circunstancias peculiares, quedando por lo tanto autorizado a modificar el alquiler básico. Tal inferencia fue un error de derecho. La ley dispuso que el alquiler legal máximo a ser cobrado era el que se pagaba en octubre 1ro. de 1942 y autorizó al Administrador a sustituirlo de ocurrir cualquiera de los hechos que la propia ley provee y que permiten alterar el canon básico. Cf. *Aparicio* v. *Peñagarícano*, 84 D.P.R. 401 (1962) ; *Infanzón* v. *Administración de Estabilización Económica*, 84 D.P.R. 459, (1962). El Administrador venía obligado por lo tanto a establecer como cuestión de hecho, basado en prueba, la existencia de las relaciones personales o especiales entre el propietario y el inquilino o la existencia de las circunstancias peculiares. ▪

Una vez determinado tal hecho, le era entonces permisible en ley inferir que el alquiler más bajo se debía a esas relaciones especiales o circunstancias peculiares, y proceder a aumentarlo. Teniéndose que alterar un estado de derecho creado por la propia ley, es preciso establecer la existencia de

---

(²) En efecto, la casera no fijó este canon en su origen ya que vino a ser dueña de la propiedad en 1944, con posterioridad a la fecha en que el alquiler de $125 quedó congelado por ley. Insistió en su declaración que debido a las consideraciones mencionadas hacia la inquilina y su familia no le habían *aumentado* el alquiler. La casera compareció a la vista sin asistencia legal e indudablemente tenía la creencia errónea de que ella estaba en libertad de aumentarle el alquiler a la inquilina, y que si no lo hizo fue por esas consideraciones. En otras palabras, la casera no invocó tales relaciones como factor del canon ya congelado, sino como una razón para no haber aumentado el mismo, en la creencia equivocada de que hubiera podido hacerlo. Por otra parte, no se probó relaciones especiales entre el anterior dueño y la inquilina que afectaran el canon original de $125.00.

la situación especial de manera afirmativa, y no por inferencia o deducción del hecho en sí de que un alquiler resulta ser más bajo.

Aparte de las consideraciones de ley que gobiernan la decisión del caso, este recurso presenta otro aspecto al cual no podemos mostrarnos del todo indiferentes. El problema a que realmente se enfrentó el Administrador, y posiblemente ha de enfrentarse cada vez más, tiene otros visos. Es altamente encomiable la posición que asumió, y su deseo y esfuerzo por ser justo con las partes. Hay hechos y circunstancias en el récord indicativos de que el alquiler máximo permisible podía no ser equitativo para la casera. Las contribuciones prácticamente absorbían el alquiler anual de este segundo piso. Por la naturaleza pública del negocio de hotel, se exigía a la casera mantener la propiedad en buen estado y con frecuencia invirtiendo en reparaciones. El negocio en este local parecía ser muy productivo para la inquilina. ■

Sin embargo, el Administrador no dispone en la ley que administra, de los medios de ajustes y acomodos en situaciones como éstas de que disponía el Administrador federal bajo la legislación de inquilinato del Congreso. La Ley de Emergencia de Control de Precios de 1942 en su sección 2(c), 56 *Stat.* pág. 26, 50 U.S.C.A., *App.*, sec. 902(c) disponía que cualquier reglamento u orden del Administrador podía dictarse en tal forma y manera, podía contener aquellas clasificaciones y diferenciaciones, y proveer para aquellos ajustes y excepciones razonables que a juicio del Administrador eran necesarios y apropiados para cumplir los propósitos de la ley.

Según nos lo dice el Juez McAllister en *Kuskin & Rotberg* v. *Porter, Price Administrator*, (U.S.E.C.A.) 153 F.2d 1016, posteriormente el Congreso entendió que muchas circunstancias no usuales que requerían ser remediadas estaban siendo pasadas por alto por el Administrador, y para aminorar tales situaciones, en la Ley de Extensión de Estabilización de 1944, 58 Stat. pág. 634, adicionó a la sección 2(c) de la Ley de 1942 una disposición mandatoria en el sentido de que el Adminis-

trador proveería por reglamento para que se hicieran ajustes *individuales* en aquellos tipos de casos en que el alquiler, a la fecha del alquiler máximo, fuera sustancialmente mayor o menor que los alquileres generalmente prevalecientes para unidades comparables . . . . . *Cf. In Re Jamestown Defense Rental Area*, (U.S.E.C.A.) 171 F.2d 708.

Ocurre también que en la Exposición de Motivos de la Ley de Alquileres de 1947, sec. 201(*b*), 61 Stat. pág. 196, se dispuso que las restricciones que imponía el estatuto se administrarían con miras a rápidos ajustes cuando los dueños de unidades de alquiler estuvieran sufriendo inconveniencias debido a lo inadecuado de los alquileres máximos aplicables a sus viviendas, y bajo procedimientos encaminados a aminorar la tardanza en la corrección de los ajustes necesarios. En la Sección 204(*b*), al fijar alquileres máximos se expuso que el Administrador, mediante reglamento u orden, haría aquellos ajustes en los cánones máximos que fueran necesarios para corregir inconveniencias e injusticias y llevar a cabo los propósitos de la ley. Al hacer ajustes *individuales* o generales para eliminar o corregir otras injusticias, se observaría la norma de mantener los alquileres máximos en todo lo posible a niveles que permitirían al casero un ingreso neto razonable de tales unidades de vivienda; y al determinar si el alquiler máximo produce un ingreso neto razonable, se daría la debida consideración, entre otros, a factores como: Aumento en contribución sobre la propiedad, aumento inevitable en el funcionamiento y conservación, mejoras capitales . . . etc. Véase 50 U.S.C.A., *App.*, sec. 1894.

Como es fácil observar, nuestra ley no ha creado esa área de acción en que el Administrador pueda moverse con cierta iniciativa y flexibilidad en el ajuste de alquileres para evitar inconveniencias o injusticias en casos individuales, a la luz de hechos y circunstancias no usuales. Todo ajuste de un alquiler básico,—el alquiler que se pagaba en octubre 1ro. de 1942,—debe responder a una razón establecida de antemano en la ley.

Es incuestionable, por lo menos en lo que a locales comerciales respecta, que se ha operado un cambio sustancial de valores económicos, de rendimiento de los negocios y de costos entre la situación existente en 1942 y el presente que amerita un reexamen de los índices de control. Pero hasta tanto la Asamblea Legislativa no revise las normas que tiene establecidas en la Ley de Alquileres Razonables, en la administración del estatuto el Administrador no puede salirse de dichas normas aún cuando entienda, como es nuestra certeza que entendió en este caso, que el alquiler máximo de ley resultaba injusto para la casera. ■

Estamos resolviendo que no hay base en el récord para sostener la conclusión del Administrador al efecto de que el canon de $125 que existía al 1ro. de octubre de 1942 estaba afectado por circunstancias peculiares. No estamos resolviendo que tales circunstancias de hecho no existieran.

*Se revoca la sentencia recurrida que confirmó la actuación del Administrador fijando un canon máximo de $340.70, y se ordena a la Sala de Arecibo del Tribunal Superior que devuelva el asunto al Administrador para ulteriores procedimientos compatibles con lo aquí dispuesto.*

