52

ELSIE J. RODRÍGUEZ, demandante y recurrente, v. PABLO ÁLVAREZ ZUMAQUERO, demandado y recurrido; JUAN T. PEÑAGARÍCANO, en su carácter de Administrador de la Administración de Estabilización Económica, interventor y recurrido.

*Número:* R-64-123      *Resuelto:* 15 de marzo de 1965

*Carlos D. Vázquez,* abogado de la recurrente; *Miguel Franquiz Ventura, Alvaro Ortiz, Eduardo A. Ruiz* y *José E. Rodríguez Rosaly,* abogados del interventor.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

La recurrente arrendó al recurrido una vivienda de su propiedad por el canon convenido de $85.00 bajo un contrato verbal de arrendamiento de mes a mes. La vivienda fue construida con posterioridad al 1ro. de octubre de 1942. Por algunos años el inquilino pagó el referido canon de $85.00 sin que durante ese período existiera un canon distinto congelado por ley, o un canon razonable distinto fijado por el Administrador de Estabilización Económica. Eventualmente la casera inscribió la vivienda sin alterar el canon de $85.00. Sin embargo, a iniciativa propia del Administrador y con motivo de otras averiguaciones, en 22 de octubre de 1963 la Administración  dictó Orden fijando un canon razonable de

$96.25 mensuales efectivo el mismo a partir del 1ro. de noviembre de 1963. Esta Orden fue notificada al inquilino. En 29 de octubre la recurrente envió una comunicación al recurrido con motivo de la Orden del Administrador y le requirió para que a partir del 1ro. de noviembre hiciera efectivo el nuevo canon de $96.25. Por consejo y recomendación de la propia Administración de Estabilización Económica, el recurrido insistió en pagar el alquiler anterior. Esa situación motivó que en 22 de noviembre y en 2 de diciembre de 1963 la recurrente le enviara cartas exigiéndole el nuevo canon. En la carta de 2 de diciembre de 1963 le advirtió por vez primera que de no satisfacer dicha cantidad procedería a radicar acción de desahucio. Días después, en 6 de diciembre, el inquilino pagó los meses de noviembre y diciembre. A instancias de la propia Administración siguió resistiendo de ahí en adelante el pago, y a recomendación también de la Administración procedió a consignar la cantidad de $85.00 en el Tribunal de Distrito de Bayamón.

El 17 de febrero de 1964 la recurrente se dirigió una vez más al inquilino devolviéndole un cheque por la suma de $85.00 y le advirtió que si no hacía efectivo el alquiler de los dos meses que estarían vencidos para el 19 de febrero, se vería "obligada a proceder al desahucio". Las cuatro comunicaciones de la recurrente al inquilino fueron cartas de su abogado. Ante la negativa del inquilino, finalmente el 3 de marzo de 1964 la recurrente le interpuso una demanda de desahucio por falta de pago por los dos meses vencidos en 19 de enero y 19 de febrero de 1964.

En 17 de marzo la Administración de Estabilización Económica solicitó intervención en dicho pleito, la cual le fue concedida. El inquilino contestó la demanda y se defendió alegando que la Administración le había informado que no tenía que pagar el alquiler fijado de $96.25, sino el anterior de $85.00. En su escrito de intervención el Administrador manifestó al Tribunal lo siguiente:

"Esta Administración hace constar, que en virtud de haberse contratado un canon de $85.00 por mes que es un canon inferior al últimamente fijado, aconsejó a la inquilina a depositar las rentas en el Tribunal de Distrito de Bayamón, en consideración a que el casero interesa cobrar la renta últimamente fijada.

"Que esta Administración entiende que irrespectivo de haberse aumentado el canon de arrendamiento, la renta que viene obligado a pagar el inquilino es la contratada de $85.00 por mes, ya que la Ley contempla que se alquilen propiedades con rentas inferiores a las que fije la Administración".

Sostuvo su posición a base de que la Orden de 22 de octubre de 1963 fijando un canon razonable de $96.25 tenía un sello estampado al calce de la misma con el siguiente aviso:

"En caso de que medie un contrato entre las partes, el casero no tendrá derecho a cobrar el nuevo alquiler autorizado por esta Orden hasta que venza el término de dicho contrato, a menos que se especifique en el mismo que la renta convenida está sujeta a la determinación de esta oficina".

La Sala sentenciadora declaró sin lugar la demanda de desahucio, pero por las siguientes

CONCLUSIONES DE DERECHO

"1. Sostiene la demandante que su derecho a cobrar un canon de $96.25 mensuales nace de un nuevo contrato que surgió entre las partes cuando el demandado Alvarez Zumaquero pagó la renta de $96.25 por un término de dos meses. No tiene razón el demandante. Veamos.

"El Título 31 L.P.R.A., Sec. 3391 dispone: No hay contrato sino cuando concurren los requisitos siguientes: (1) Consentimiento de los contratantes. (2) Objeto cierto que sea materia del contrato. (3) Causa de la obligación que se establezca.

"2. Asumiendo que en este caso hubo un consentimiento tácito por parte del demandado, aviniéndose a pagar la renta aumentada, no podemos olvidar que la intimidación es uno de los vicios que anulan el consentimiento y, en su consecuencia, al contrato.

"3. El Título 31 L.P.R.A., Sec. 3406 dispone:

'Hay violencia cuando para arrancar el consentimiento se emplea una fuerza irresistible.

'Hay intimidación cuando se inspira [a] uno de los contratantes el temor racional y fundado de sufrir un mal inminente en su persona o bienes o en la persona o bienes de su cónyuge, descendientes o ascendientes.

'Para calificar la intimidación debe atenderse a la edad, al sexo y a la condición de la persona.

'El temor de desagradar a las personas a quienes se debe sumisión y respeto no anulará el contrato.

"4. Interpretando al Artículo 1267 del Código Civil Español idéntico a la Sección legal antes citada, Manresa en su volúmen 8, cuarta edición nos dice:

'Esencial es también que se amenace con un *mal*, y en esta sola palabra nos detenemos, sin pasar a los adjetivos que la siguen, porque no entendiendo el legislador como mal aquello que el mismo derecho ampara o impone, deducimos de ahí la consecuencia importante de que el mal ha de ser injusto, y de que no intimida quien se limita a invocar su derecho, sin abusar del mismo. Así no podrá decir el deudor que consiente en pagar bajo la amenaza de acudir a los Tribunales y de las costas del litigio, que fue nulo su consentimiento, y en cambio lo será si traspasando el acreedor los límites de su derecho, hubiera arrancado del deudor con las mismas amenazas legales una novación de contrato o la confesión de una mayor deuda.

"5. En el caso que nos ocupa, sin duda alguna, de haber existido un nuevo contrato, el consentimiento del demandado se obtuvo en virtud de amenazas de acción judicial hechos por la demandante y al hacerlo, traspasó la demandante los límites de sus derechos".

Para revisar ese fallo expedimos el presente recurso de revisión. El recurrido no ha comparecido. La Administración de Estabilización Económica compareció a oponerse a que se expidiera el recurso y posteriormente ha radicado alegato en los méritos. Insiste ante nos como ante la Sala de instancia, en que por razón del aviso estampado al calce de la Orden el inquilino no venía obligado a pagar el canon que ella misma fijara.

Con frecuencia estas relaciones arrendaticias intervenidas por el Estado, hacen surgir cuestiones litigiosas com-

plejas. De ello dan fe nuestras decisiones y las decisiones de los demás tribunales. Distinto a lo dicho, tenemos en este caso una situación extremadamente sencilla que la hicieron compleja. De acuerdo con el Art. 6 de la Ley de Alquileres Razonables(*) el Administrador está facultado para fijar un alquiler razonable en aquellos casos en que la vivienda o edificación fuere posterior al 1ro. de octubre de 1942, como ocurre en este caso. Mientras tanto, y hasta que se fija ese alquiler razonable, ha sido permisible el alquiler cobrado y pagado por voluntad de las partes al arrendarse por primera vez la edificación. *Aparicio* v. *Peñagarícano, Admor.*, 84 D.P.R. 401, 405 (1962). En ese caso hicimos una detallada exposición de todos los tipos de alquileres legales o permisibles bajo la legislación de inquilinato. Véase 17 R.&R.P.R. sec. 186–6.

█ Aquí se trata de un arrendamiento verbal sin plazo fijo en que por haberse fijado un alquiler mensual el contrato tiene la duración de un mes, según lo dispone el Art. 1471 del Código Civil, ed. 1930. En todo caso el arrendamiento termina automáticamente sin necesidad de requerimiento especial cumplido el término, según este artículo. A partir del 1ro. de noviembre de 1963 la casera tenía el indiscutible derecho a cobrar y recibir el alquiler razonable fijado por el Administrador en la cantidad de $96.25. La Orden del Administrador fijando ese canon creó un estado de ley a su favor que ella podía hacer valer, inclusive, mediante la acción de desahucio al negarse el inquilino a pagar ese alquiler. Por otra parte, no surge que el inquilino pidiera remedio alguno contra dicha Orden ante el propio Administrador o ante los tribunales, ni que el Administrador, a iniciativa propia la alterara, o la dejara sin efecto.

█ La posición de la Administración aconsejando al inquilino al incumplimiento de su propia Orden sin haberla

---

(*) Art. 6, Ley Núm. 464 de 1946, enmendada. 17 L.P.R.A.—ed. 1961— sec. 186.

modificado basándose en el sello estampado al calce de la misma, es insostenible. Cualquiera que fuera el efecto legal de dicho sello o aviso en este caso específico, podía ser claro para una agencia especializada en la materia que el mismo no era aplicable sino a contratos de arrendamiento hechos a plazos fijos, por términos en exceso del contrato de mes a mes aquí envuelto. Indudablemente dicho aviso responde a aquella disposición del Art. 6 de la Ley de Alquileres al efecto de que, no obstante lo que disponga en contrario cualquier *contrato, pacto o convenio celebrado ya* o a *celebrarse* en lo sucesivo, ningún propietario podrá cobrar ni recibir un canon mayor que el alquiler básico o el razonable fijado por el Administrador, aunque sí podrán cobrarse, pagarse o recibirse cánones más bajos que el alquiler básico o el alquiler razonable. Dentro de la filosofía de la Ley de Alquileres, que protege al inquilino, esa disposición quiere decir, y ése es también el alcance del aludido aviso, que si hubiere un contrato o un pacto fijando determinado alquiler durante un plazo o período fijo, y dicho alquiler así pactado luego es aumentado por el Administrador, mientras dure el término de dicho pacto o contrato el inquilino podrá seguir pagando el alquiler menor convenido. Ese criterio no era aplicable al caso de autos en que a cada período de un mes terminaba y surgía un contrato de arrendamiento.

■ Nada hay en la Ley que prohiba o impida el que el alquiler razonable fijado por el Administrador se haga valer contra la persona que en ese momento ocupa la propiedad. Al supuesto contrario conduciría la posición asumida aquí por el Administrador, y prácticamente haría inefectiva la Ley e inefectivos los poderes conferidos a éste. La fijación de un alquiler razonable gira en torno a la propiedad—*res*— sobre normas de costos y de la utilidad y servicio que el local ofrece al inquilino, *Martínez Rivera* v. *Peñagarícano, Admor.*, 90 D.P.R. 542 (1964), no en torno de consideraciones sobre la persona que la ocupa.

■ Para resolver, precisamente, controversias arrendaticias entre un casero y su inquilino, la Ley facultó al Administrador a fijar cánones razonables sujeto a ciertas normas, entre ellas, que los cánones razonables así fijados sean prospectivos en efecto, *Aparicio*, supra. Si mayores que el existente, el casero no puede cobrarlos por período alguno de tiempo ya pasado; y si menores del existente, tampoco dan derecho al inquilino al reembolso de los ya pagados, excepto en aquellas situaciones específicas en que la Ley expresamente permite dichos reembolsos. Cf. *Eisele* v. *Orcasitas*, 84 D.P.R. 360 (1962); *Sucn. A. Bernat* v. *Peñagarícano, Admor.*, 84 D.P.R. 526 (1962); *Aparicio* v. *Peñagarícano*, ya citado.

■ En cuanto al tratamiento de este caso en la esfera judicial, y sin que estemos aceptando que constituye una amenaza o intimidación dolosa el manifestarle a un inquilino que se procederá a su desahucio si no satisface un canon de arrendamiento legalmente autorizado, nos parecen inaplicables los fundamentos de derecho que fueron utilizados para resolver el litigio, a base de la existencia de vicios del consentimiento contractual, porque no se trata de contratos otorgados como consecuencia de las comunicaciones de la casera. Era la vieja relación arrendaticia de mes a mes, que en lugar de seguir devengando un canon de $85, a partir del primero de noviembre de 1963 devengaba uno mayor fijado por el Administrador.

*Se revocará la sentencia que desestimó la demanda de desahucio y se devolverán los autos a la Sala sentenciadora para que dicte otra declarando el desahucio con lugar sujeto a aquellos otros términos y condiciones aplicables por las leyes vigentes.*