SEBASTIÁN INFANZÓN, demandante y recurrente, *v.* ADMINISTRACIÓN DE ESTABILIZACIÓN ECONÓMICA ET AL., demandados y recurridos, ISABEL PÉREZ MALDONADO, interventora.

*Número:* 23   *Resuelto:* 1 de febrero de 1962

*Ernesto Juan Fonfrías, F. Fernández Cuyar* y *Fausto Ramos Quirós,* abogados del recurrente; *Víctor M. Marchand, Nieves Agostini de Torres* y *Miguel Francis Ventura,* abogados del recurrido; *Otero Suro & Otero Suro,* abogados de la interventora *Isabel Pérez Maldonado.*

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Durante muchos años antes de 1949, el peticionario ocupó como inquilino el edificio comercial 1102 de la Ave. Ponce de León, con una sola planta. Pagaba un canon máximo de $270 mensuales. En el año 1949 el propietario construyó dos plantas adicionales que arrendó al propio inquilino. Con miras a la información sometida por el propietario a la Administración de Estabilización Económica ésta fijó en 19 de octubre de 1949, sin intervención del inquilino, un canon de $345 para una de las plantas y un canon de $400 para la otra. A base de esa determinación el inquilino y el propietario suscribieron un contrato de arrendamiento en escritura pública por 10 años fijando dichos cánones para las referidas plantas más el canon original de $270. Al fijar esos cánones el Administrador hizo constar que se basaban en la información suministrada por el casero y si dicha información fuese equivocada, incompleta o falsa, la orden fijando los cánones se tendría por no dictada y se dictaría otra en su lugar a base de la verdadera información que debió haberse rendido originalmente.

En septiembre de 1950 el peticionario acudió a la Administración solicitando una rebaja de los alquileres fijados

para las dos plantas recién construidas. La Administración no hizo decisión alguna y en enero de 1952 el peticionario volvió a solicitar revisión de los alquileres exponiendo que el propietario había hecho constar un costo de construcción de $74,000 cuando dicho costo había sido de 40 a 42 mil. Después de varios trámites, la Administración celebró vistas en 3 de octubre y 10 de diciembre de 1952 en que se practicó prueba en cuanto al costo de lo edificado. A base de los planos, de los presupuestos de partidas y demás documentación archivada por el propietario en el Negociado de Permisos y en el Fondo del Seguro del Estado, la prueba del inquilino tendió fuertemente a demostrar que el costo de esta obra había sido de $40,408.80. Aportó además prueba pericial demostrativa de que esta obra pudo haber costado unos $43,000 aunque aceptaba hasta $46,000. El propietario trató de desmentir dicha prueba con la del propio contratista que hizo la obra quien declaró que el contrato de construcción había ascendido a $70,937.75. (¹)

En 30 de septiembre de 1953 el Administrador envió al inquilino una comunicación informándole que a juzgar por la evidencia presentada no se justificaba un ajuste en el alquiler máximo fijado y se cerraba el caso. En 6 de octubre siguiente el inquilino solicitó del Administrador que expusiera las razones de su fallo, y en 20 de octubre de 1953 éste le envió copia de un memorando sometido por el abogado de la Admi-

---

(¹) Confrontado con el hecho del costo de $40,408.60 según planos, desgloses y documentación oficial, alguna bajo juramento, sometida a las agencias del gobierno comparado con $70,937.75, el récord demuestra lo siguiente mientras declaraba el contratista: "La cantidad que se consigna en el contrato con la dueña del edificio representa la verdad en cuanto al coste del edificio. El presupuesto que se hizo para someterlo al Negociado de Permisos es solamente un presupuesto aproximado que siempre se hace por mucho menos cantidad de la que se estima que va a costar el edificio. [P] ¿Con qué fin? [R] Con el fin de pagar lo menos posible por seguro de obreros; y en realidad ese presupuesto se hace—no de acuerdo con lo que va a costar el edificio, sino de acuerdo con lo que uno estima que es el mínimo que va a aceptar la Junta de Planes. Si hubieran aceptado $20,000.00 se hubiera hecho por veinte mil."

nistración. Este memorando constituye la base de hecho y de derecho que tuvo el Administrador para negar la revisión de los alquileres. Se hizo constar en el mismo que había habido un gran conflicto en la prueba en relación con el costo de la construcción. El Administrador no resolvió ese conflicto de prueba. Por el contrario, produjo un factor que no había sido objeto de los planteamientos de las partes y determinó lo siguiente: Que el solar en que estaba enclavado el edificio aparecía tasado para fines contributivos en $11,360 para el año económico 1950–51 y se había tasado para iguales fines en $57,620 para el próximo año 1951–52. Determinó que esta cifra equivalía a un 80% del valor real del solar y que por lo tanto dicho valor real era de $72,000. De este valor del solar que desde antes de 1942 ya contenía el edificio de una planta, asignó un 40% a la segunda y tercera plantas. Usando el estimado de costo del perito del inquilino de unos $46,000, adicionó esa proporción del valor del solar montante a $28,800, fijando como costo de construcción $74,800. A base de ese costo un 12% llegaba hasta $748, y por lo tanto sostuvo el alquiler de $745 para las dos plantas como razonable. (²) ■

_____

(²) En vista de la doctrina aplicable a esta agencia administrativa en cuanto a los hechos, *Ledesma, Admor.* v. *Tribunal,* 73 D.P.R. 396; *Mejías, Admor.* v. *Tribunal,* 75 D.P.R. 447; *García* v. *Tribunal Superior,* 82 D.P.R. 673, pág. 680; *Mejías* v. *Tribunal,* 79 D.P.R. 317; Cf: *Rivera* v. *Benítez, Rector,* 73 D.P.R. 377, pág. 382; *Denis* v. *Asoc. Fondo de Ahorro,* 75 D.P.R. 847, pág. 852; *Concepción* v. *Junta de Contabilidad,* 80 D.P.R. 194, pág. 199; *López* v. *Junta de Planificación,* 80 D.P.R. 646, pág. 673; *Viera* v. *Comisión Hípica,* 81 D.P.R. 707, pág. 717, es de suma importancia para la protección de los derechos de las partes y para la debida función judicial posterior de los tribunales, que el Administrador determine de manera específica los hechos ante sí en que basa sus fallos. De haber resuelto el conflicto de la prueba en cuanto al costo de construcción, y de serlo de manera favorable al casero, no habría surgido la cuestión de derecho que se ha suscitado. Al hacer sus cálculos el Administrador usó el costo ofrecido por el inquilino. El por qué de un 40% del alegado valor del solar para las dos plantas y el por qué, dentro de su teoría de que ese valor formaba parte del costo de construcción, se utilizó el del 1952 y no el del año 1949 fecha en que se realizó la obra, aparentemente fueron cálculos arbitrarios.

El inquilino acudió a la Sala de San Juan del Tribunal Superior para revisar dicha determinación, caso 53–4043. Al radicar su petición desconocía los fundamentos del fallo del Administrador y así lo hizo constar. No obstante, en el alegato claramente informó al Tribunal Superior en cuanto al valor del solar que el Administrador había considerado como costo de construcción. Además, el Tribunal Superior quedó debidamente informado de ese hecho por los autos originales que le fueron elevados. Sin resolver estas cuestiones, el Tribunal en 9 de marzo de 1955 decidió el caso y confirmó al Administrador en la fijación de esos alquileres bajo la doctrina de que sólo estaban envueltas cuestiones de hecho, citando a *Ledesma* v. *Tribunal* y a *Mejías Santana* v. *Tribunal Superior,* supra.

Procede dejar sentado, aunque no con el efecto de una revisión, que dicho fallo era equivocado. El caso presentaba una cuestión de derecho, por cierto de importancia cual era, si ante la disposición de la Ley de Alquileres Razonables en el sentido de que el alquiler máximo de una edificación construida con posterioridad al 1ro. de octubre de 1942 no debe exceder del 12% del *coste de construcción,* el Administrador tenía o no facultad para incluir el valor de un solar que *antes de 1942* constituía con su edificación una unidad económica de alquiler, que producía un canon máximo. No era el caso de una edificación construida con posterioridad a 1942 que para edificarla el propietario hubiera tenido que invertir en la compra o adquisición del solar.

Sin embargo, como el inquilino no acudió ante este Tribunal para revisar aquella sentencia del Tribunal Superior, esa es la ley de su caso, y en lo que a él como inquilino respecta, hay que partir ahora de aquella situación de hecho y de derecho que es firme. Esos son los antecedentes del recurso ante nos.

En 27 de febrero de 1957 el inquilino radicó petición ante la Administración para que se hiciera un ajuste de los refe-

ridos alquileres. Alegó que al fijar los cánones en 19 de octubre de 1949 el Administrador había hecho constar que los mismos se basaban en la información suministrada por el casero y que si dicha información era equivocada, incompleta o falsa la orden se tendría por no dictada y se dictaría una nueva a base de la verdadera información que debió haberse rendido originalmente; que el Administrador había concluido que el costo de construcción era de $46,000 [como cuestión de realidad el Administrador aceptó implícitamente el costo de construcción de $46,000 que admitía el inquilino en lugar del costo de $70,931.75 del propietario]; y que por lo tanto el alquiler fijado originalmente debía modificarse de acuerdo con la reserva hecha por el propio Administrador. Alegó además que el alquiler era irrazonable porque al sumársele a la construcción el 40% del valor del solar, no se hizo una rebaja proporcional en el canon de la primera planta que incluía también el solar; y que asumiendo que fuera correcto adicionar ese valor, el Administrador debió haber usado el valor de tasación del solar de $11,360 para el año en que se hizo la edificación y no la tasación de $57,620 de años posteriores.

De primera intención el Administrador denegó la solicitud por entender que equivalía a una reconsideración de su fallo anterior sosteniendo los alquileres. Posteriormente, en vista de una moción de reconsideración que le sometiera el inquilino, dio curso a los procedimientos de revisión de los cánones y oyó a las partes en la correspondiente vista. En 28 de octubre de 1957 dictó resolución desestimando la solicitud y dejó en pie los alquileres fijados. En esta ocasión el Administrador tampoco dirimió el conflicto de prueba en cuanto al costo real de la construcción ni hizo conclusiones sobre si la información dada originalmente por el casero que sirvió de base para los cánones que fijó era o no equivocada, incompleta o falsa. Por el contrario, se ratificó en su tesis de adicionar al costo de la construcción parte del valor del solar.

El inquilino acudió de nuevo en revisión ante la Sala de San Juan del Tribunal Superior, caso 57-6351, y sin entrar en los méritos, la Sala sentenciadora en 20 de marzo de 1959 dispuso del asunto por razón de cosa juzgada y declaró sin lugar la solicitud de revisión. Expedimos este certiorari. ▮

Como observamos antes, dentro de la filosofía económica y propósitos de la Ley de Alquileres Razonables y ante la disposición del Legislador al efecto de que el alquiler de nuevas edificaciones se fijará a base de no exceder de un 12% del costo de la construcción, en una situación de hecho como la del caso presente si procede o no incluir como parte del costo de la edificación de una segunda y tercera plantas un valor acreditado al solar que ya le servía a una primera planta desde antes de 1942, es un hecho que suscita una importante cuestión de derecho en la interpretación del estatuto de alquileres. Asumiendo que proceda adicionar tal factor, si dentro del elemento de costo de construir ha de considerarse el valor de mercado de ese solar que con su edificación ya formaba en su origen una unidad económica de alquiler, o si ha de tomarse el costo del solar para el propietario, es otra cuestión también de importancia en la aplicación de la ley. No obstante, nada podía resolver la Sala sentenciadora ni podemos resolver en cuanto a tales extremos ya que la cosa está juzgada. Se ha visto por el historial del caso que estas cuestiones de hecho y de derecho estuvieron ante el Tribunal Superior en el caso 53-4043 entre las mismas partes y si bien el fallo en aquel entonces fue erróneo, habiéndose dictado con jurisdicción y no existiendo fraude en la obtención del mismo, no por ello deja de ser cosa juzgada al no solicitarse revisión del mismo. "Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión."—Art. 1204 Código Civil (ed. 1930). Véanse autoridades y casos recopilados en *Bolker* v. *Tribunal Superior*, 82 D.P.R. 816, págs. 823–825. ▮

Sostiene el peticionario que la Sala sentenciadora de hecho eliminó el poder de jurisdicción continua con que el legislador invistió al Administrador para de tiempo en tiempo dictar, enmendar o revocar aquellas reglas, reglamentos, órdenes y determinaciones que estime necesarios y propios a fin de llevar a cabo los propósitos de la Ley.—Art. 5(d) Ley de Alquileres Razonables.—Por lo menos, en las circunstancias de este caso la determinación de la Sala sentenciadora no produjo tal efecto. ▮

La anterior disposición de la ley permite al Administrador, ante hechos y circunstancias fluctuantes, modificar sus determinaciones sobre alquileres aun cuando las mismas fueren confirmadas judicialmente a la luz de la situación de hecho y de derecho en que se dictaren, como una facultad útil y necesaria para mantener los alquileres respondientes en todo momento a las normas del estatuto que administra. De ahí la jurisdicción continuada que ejerce sobre una materia que puede estar sujeta a cambios. Cf: *Federal Comm'n.* v. *Broadcasting Co.*, 309 U.S. 134; *Easton Publishing Co.* v. *Federal Communications Comm'n.* (C.A.D.C. 1950), 185 F.2d 987; *Delta Air Lines, Inc.* v. *C.A.B.* (C.A.D.C. 1960), 280 F.2d 636. En el segundo procedimiento administrativo no se practicó prueba ni se trajo hecho alguno o circunstancia distintos a los que tuvo ante sí el Administrador en el primer procedimiento. En efecto, el segundo procedimiento constituye sólo un intento del inquilino de obtener una reconsideración en el foro administrativo del fallo judicial anterior. En ausencia de hechos y circunstancias distintos la ley del caso del peticionario en ese intento de reconsideración era la determinación del Administrador confirmada judicialmente que adicionó como costo de la construcción parte de un valor dado al solar.

El fallo anterior del Tribunal, caso 53-4043, constituye cosa juzgada de las cuestiones litigiosas sometidas a la Sala sentenciadora en este segundo recurso para revisar la misma

negativa del Administrador a modificar los cánones fijados.(³)

*Se anulará el auto de certiorari expedido y quedará en pie y se dejará en todos sus efectos la sentencia recurrida.*

---

(³) La aplicación de la doctrina de cosa juzgada que se hace en esta decisión se circunscribe a los hechos y circunstancias de este caso. No se resuelven, ni se implican criterios sobre otras fases de dicha doctrina en su aplicación a agencias administrativas y los procedimientos ante ellas, ni estamos resolviendo cuál hubiera sido la norma a seguir de haber el Administrador dejado sin efecto su determinación original de alquileres resolviendo los conflictos de prueba en cuanto al costo de la edificación en sí, o de haber concluido que el casero dio información equivocada o falsa para la fijación de los cánones. Véanse: la ilustrativa discusión del Profesor Davis sobre la doctrina de cosa juzgada en torno al funcionamiento de las agencias administrativas en su Tratado *"Administrative Law"* (1958) Vol. 2, págs. 545 a 628; New York Jurisprudence (1958) Vol. 1, págs. 464 a 468; Cf: *In re Federal Water & Gas Corp. et al.,* 188 F.2d 100; *Mayfair York Corp.* v. *Weaver,* 178 N.Y.S.2d 254; *Happy Coal Co.* v. *Harlbarger,* 65 S.W. 2d 977; *Hollywood Circle* v. *Department of Alcoholic Bev. Con.,* 361 P.2d 712; *Sunshine Coal Co.* v. *Adkins,* 301 U.S. 381; *Bockman* v. *Arkansas State Medical Board,* 313 S.W.2d 826; *Hurwitz* v. *Caputa,* 207 N.Y.S.2d 153; *Killingsworth* v. *Broyles,* 300 S.W.2d 164; *Ogier* v. *Pacific Oil and Gas Development Corporation,* 288 P.2d 101.