# 2003 DTA 75

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN, PANEL IV**

JOSE M. RALAT BERMUDEZ
Recurrido

v.

LAS HACIENDAS, S.E.; ORION CONTRACTORS CO., INC.; U.S.
FIDELITY GUARANTY, INC.
Recurrentes

Núm. KLRA-2002-00508

San Juan, Puerto Rico, a 16 de abril de 2003

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Cordero y Rodríguez Muñiz
Rodríguez Muñiz, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 10 de julio de 2002, compareció ante nos Orion Contractors, Co., Inc. (en adelante, la recurrente), mediante solicitud de revisión judicial. Solicitó la revisión de la resolución emitida por el Departamento de Asuntos del Consumidor (en adelante, DACO), el 31 de mayo de 2002 y notificada el 10 de junio de 2002.

A continuación, exponemos brevemente el trasfondo fáctico y procesal del caso.

### I

En o alrededor del 28 de octubre de 1999, el Sr. José Ralat Bermúdez (en adelante, el recurrido), le compró, mediante escritura de compraventa, a Las Haciendas, S.E. (en adelante, Las Haciendas), una residencia sita en la Calle 17 Bloque T-13, de la Urbanización Villas de Cambalache, en el pueblo de Río Grande, a un precio de ciento siete mil ciento veinte dólares ($107,120.00). Dicha propiedad fue construida por la recurrente.

A poco más o menos de un año después de efectuada la compraventa, se comenzaron a evidenciar ciertos defectos en la construcción de la propiedad adquirida. ■ Ante esta situación, el recurrido instó la querella número 100010137 ■ ante DACO. En la misma, solicitó el pago de la propiedad al valor que ésta tenía en ese momento y la cancelación del contrato y/o que por su seguridad y la de su familia le mudaran a otra propiedad.

El 3 de noviembre de 2000, DACO, luego de haber efectuado una inspección ocular, ■ emitió un informe de inspección. En el mismo enumeró, en síntesis, los siguientes hallazgos: i) pequeñas grietas en el techo y paredes; ii) manchas de humedad en el comedor, sala y cuarto de baño; iii) empañetado "*agalletado*"; iv) filtraciones; v) humedad en el interior de los guarda ropa; vi) descarga inadecuada de agua a través del tubo de desagüe de la bañera; vii) humedad en el suelo del pasillo, cuarto de baño del pasillo y comedor, y viii) humedad en la parte interior de las ventanas de algunos de los dormitorios. Como resultado de dicha inspección, se estimaron los daños en tres mil seiscientos setenta y tres dólares con ochenta centavos ($3,673.80). *Apéndice* de la solicitud de revisión, páginas 21-26.

El 14 de diciembre de 2000, luego de la celebración de una vista administrativa, ■ DACO emitió una resolución, mediante la cual ordenó a la recurrente y a Las Haciendas, S. E. (en adelante, las querelladas, cuando nos refiramos a ambas), que dentro del plazo de veinte (20) días, contados a partir de la notificación de la misma, debían, solidariamente, corregir lo siguiente: las filtraciones en la losa de techo, el desagüe de la bañera del baño del pasillo, la puerta principal de la residencia, un zócalo que estaba sin lechada, las cerraduras de las puertas de los baños, dos losetas que estaban rotas y, además, detectar el origen de la humedad del piso. Advirtió que de no cumplir con lo ordenado dentro del plazo concedido, debían pagar tres mil setecientos dólares ($3,700.00), más los intereses correspondientes. Además, DACO le ordenó a la afianzadora del proyecto, la Puerto Rican American Insurance Company, responder subsidiariamente por el cumplimiento de lo ordenado, hasta el monto de su fianza. *Id.,* a las páginas 13-20.

El 19 de enero de 2001, notificada el 22 del mismo mes y año, DACO emitió una orden para que las

querelladas mostraran causa por la cual no se les debía multar ante el incumplimiento de lo ordenado en la resolución antes mencionada. *Id.* a la página 27.

Posteriormente, luego de celebrada la vista para mostrar causa, el 26 de febrero de 2001, DACO emitió y notificó una resolución en la cual determinó que no procedía la imposición de multas, puesto que la recurrente había estado cumpliendo con lo ordenado. Expresó que, para esa fecha, ya había sido reparado el desagüe del baño del pasillo, la puerta principal de la residencia y las cerraduras de las puertas de los baños. Igualmente, se habían reparado los zócalos sin lechada y las dos losetas rotas. Además, expuso que, debido a las inclemencias del tiempo, no se había podido terminar de reparar las filtraciones del techo y que con respecto a la humedad del piso, ya habían empañetado dos (2) pulgadas en la parte inferior exterior de las paredes de la casa. *Id.* a las páginas 30-33.

El 24 de julio de 2001, DACO acudió al Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante el TPI), mediante *Petición Para Hacer Cumplir Orden* emitida mediante resolución el 26 de febrero de 2001. Alegó haber concedido veinte (20) días a las querelladas para que cumplieran con lo ordenado y que éstas no lo habían hecho. DACO puntualizó, además, que la resolución era final y firme a esa fecha. *Id.*, a las páginas 34-35.

El 13 de agosto de 2001, notificada el 26 del mismo mes y año, el TPI emitió una orden, mediante la cual citó a la recurrente para que mostrara causa por la cual no se debía ordenar el cumplimiento con la resolución administrativa emitida por DACO *Id.,* a la pagina 36. A la vista para mostrar causa comparecieron DACO y la recurrente, debidamente representados por abogados. DACO alegó, basándose en el expediente administrativo, que la recurrida ya había efectuado algunas de las reparaciones y que había algunas que no le correspondían a ella y sí a Las Haciendas; además de que era posible que los problemas de humedad fueran ocasionados por desplazamiento del terreno. Finalmente, se comprometió a enviar un inspector a revisar el área, por lo que el TPI dejó el caso sin señalamiento en lo que DACO realizaba las gestiones con el inspector. *Id.*, a la página 37.

El 8 de octubre de 2001, el recurrido interpuso ante DACO una segunda querella [5] en contra de las querelladas, básicamente bajo las mismas alegaciones contenidas en la querella instada previamente. *Id.*, a la página 6.

El 9 de octubre de 2001, la recurrente presentó ante el TPI una moción notificando la negativa del recurrido a permitir las reparaciones. Adujo que el recurrido expresó, por conducto de su representación legal, que no deseaba que se realizaran trabajos con relación al techo de su residencia en el interior de la misma. *Id.*, a la página 39.

Posteriormente, DACO señaló otra inspección ocular ■ para el 10 de octubre de 2001. El día 16 del mismo mes y año, se emitió el correspondiente informe de inspección. El mismo reflejó, en síntesis, la existencia de manchas color amarillo y de humedad en el plafón del cuarto de baño del pasillo, así como del cuarto dormitorio principal, izquierdo y del centro; también se encontraron grietas menores. Tanto las manchas como las grietas abarcaban un área mayor al 5% del área total. En conclusión, se determinó que al no haberse detectado grietas de magnitud significativa en ningún lugar de la residencia ni fallas estructurales, los defectos observados se podían corregir con un tratamiento para impermeabilizar la losa de techo y un sellado adecuado de la junta de piso y pared.

Luego de varios trámites procesales, el 22 de octubre de 2001, DACO presentó ante el TPI una moción de desistimiento sin perjuicio. Adujo que su interés en el desistimiento era el de continuar con los procedimientos administrativos en cuanto a *"un co-demandado"*. *Id.*, a la página 43. El TPI emitió sentencia el 6 de diciembre de 2001, a esos efectos. *Id.*, a la página 47.

Finalmente, el 31 de mayo de 2002, notificada el 10 de junio del mismo año, DACO emitió la resolución recurrida. Determinó que las querelladas debían entregar, solidariamente con la compañía aseguradora, la cantidad de cinco mil novecientos ochenta y nueve dólares, ($5,989.00) para sufragar los gastos de un tratamiento de techo con garantía de diez años. Además, les ordenó corregir el problema de acumulación de agua en el patio. *Id.*, a la página 1. También, le ordenó a United States Fidelity & Guaranty, Co. responder de forma solidaria hasta el monto de la fianza prestada. ■

Inconforme con la determinación, el recurrente acude ante nos mediante recurso de revisión judicial. En el mismo, señaló la comisión de los siguientes errores:

*"ERRO EL HONORABLE DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR AL NO TOMAR EN CONSIDERACION LA RESOLUCION ANTERIOR ENTRE LAS MISMAS PARTES QUE CONSTITUYE COSA JUZGADA ENTRE ELLOS.*

*ERRO EL HONORABLE DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR AL NO TOMAR EN CONSIDERACION LA NEGATIVA DE LOS QUERELLANTES A PERMITIR LAS REPARACIONES COMO LO REQUIERE EL REGLAMENTO.*

*ERRO EL HONORABLE DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR AL DETERMINAR LA EXISTENCIA DE FILTRACIONES ANTE LA AUSENCIA DE TAL DETERMINACION EN LOS INFORMES DE INSPECCION REALIZADOS POR EL PROPIO DACO.*

*ERRO EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR AL NO APLICAR A LA PRESENTE DETERMINACION LOS CRITERIOS DE VICIOS DE CONSTRUCCION QUE AMENAZAN RUINA TRATANDOSE [sic] DE UNA ESTRUCTURA CON MAS DE DOS AÑOS AL MOMENTO EN QUE APARECEN LOS DEFECTOS RECLAMADOS EN LA QUERELLA.*

*ERRO EL HONORABLE DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR AL ORDENAR A ORION CONTRACTORS, CO., INC. A REPARAR SOLIDARIAMENTE LOS DEFECTOS DE QUE ALEGADAMENTE ADOLECE EL TERRENO A PESAR DE QUE ESTA [sic] NO TUVO PARTICIPACION EN LA PREPARACION DEL MISMO."*

Por los fundamentos que expondremos, procedemos a expedir el auto solicitado y revocar la resolución recurrida.

## II

El Artículo 6(i) de la Ley Número 5 de 23 de abril de 1973, mejor conocida como la Ley Orgánica del Departamento de Asuntos del Consumidor, según enmendada, le concede al Secretario de DACO, entre otros, los siguientes poderes y facultades:

*"(i) Interponer cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de este capítulo y hacer que se cumplan las reglas, reglamentos, órdenes, resoluciones y determinaciones del Departamento.*

*A estos efectos, cualquier petición para hacer cumplir una orden del Departamento de Asuntos del Consumidor, se someterá o presentará en la Sala del Tribunal de Justicia correspondiente a la Oficina Regional del Departamento donde se haya llevado a cabo el procedimiento de querella, independientemente que la parte querellada (demandada) no resida en el área cubierta por dicha Oficina Regional. 3 L.P.R.A. sec. 341e(i)."*

La prerrogativa que tiene DACO para acudir al Tribunal de Primera Instancia para poner en vigor su dictamen le viene dada desde el Artículo 13 de la Ley Número 5 de 23 de abril de 1973, 3 L.P.R.A. sec. 3411, que dispone:

*"(e) El Secretario podrá recurrir al Tribunal Superior de Puerto Rico en solicitud de que se ponga en vigor cualquier orden de cesar y desistir por él emitida o cualquier orden correctiva. El incumplimiento de una orden judicial declarando con lugar tal solicitud constituirá desacato al Tribunal."*

Por otro lado, la Ley de la Judicatura de Puerto Rico de 1994, según enmendada, en su Artículo 5.003, 4 L.P.R.A. sec. 22o, establece que entre los asuntos civiles que podrá atender el Tribunal de Primera Instancia se encuentra *"toda solicitud para poner en vigor las determinaciones de las agencias administrativas..."*.

O sea, el foro judicial está facultado para poner en vigor y ordenar la ejecución, por la vía procesal ordinaria, de la resolución de una agencia, así como para implantar cualquier otro remedio que estime pertinente ante el incumplimiento de sus órdenes. **Véase** *Srio. DACO v. Comunidad San José, Inc.,* 130 D.P.R 782,795-797(1992).

Una agencia como DACO, que naturalmente carece del poder coercitivo que ostentan los tribunales para exigir el cumplimiento de sus órdenes y resoluciones, sólo podría cumplir los propósitos para los cuales fue creada si goza del poder de acudir a los tribunales invocando su auxilio para el ejercicio efectivo de sus facultades, *Id.*, a la página 795.

[Una] solicitud de revisión y [una] solicitud de poner en vigor la orden de [una agencia] no son análogas. En la primera, el tribunal revisa la determinación de la [agencia] y en la segunda, una vez final y firme la determinación, se implanta la misma sin pasar juicio sobre su corrección. *Industria Cortinera, Inc. v. Puerto Rico Tel. Co.,* 132 D.P.R. 654, 664 (1993). El Tribunal de Primera Instancia no tiene jurisdicción ni competencia para revisar una decisión administrativa y ordenar la reapertura o continuación de los procedimientos en DACO. Tampoco puede DACO ordenar la reapertura de los procedimientos ante sí, una vez éstos han advenido finales y firmes.

La defensa de cosa juzgada se basa en el Artículo 1204 del Código Civil, 31 L.P.R.A. sec. 3343. Dicho artículo dispone que:

*"Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre los casos, las personas de los litigantes y la calidad con que lo fueron."*

El efecto de cosa juzgada significa que las partes tienen que considerar los puntos discutidos como definitivamente resueltos, y no pueden volver nuevamente sobre éstos. *Igaravidez v. Ricci,* 147 D.P.R. 1 (1998). Esta doctrina tiene su razón de ser en consideraciones de índole económica y procesal tales como: (1) proteger a los litigantes contra el hostigamiento que conlleva estar sujeto a juicios repetidos sobre la misma controversia; (2) promover la economía judicial al evitar litigios innecesarios, y (3) prevenir sentencias inconsistentes. *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. 753, página 761.

Esta doctrina también impide que se litigue en un pleito una reclamación que pudo haberse litigado y adjudicado en un pleito anterior entre las mismas partes y sobre la misma causa de acción. *Mercado Riera v. Mercado Riera,* 100 D.P.R. 940 (1972); *Isaac Sánchez v. Universal C.I.T. Credit,* 95 D.P.R. 372 (1967).

En el ámbito administrativo, la defensa de cosa juzgada tiene varias vertientes, a saber: dentro de la misma agencia a sus propias decisiones; interagencialmente, es decir, de una agencia a otra y entre las agencias y los

tribunales. *Rodríguez Oyola v. Machado Díaz*, 136 D.P.R. 250, 253 (1994).

Bajo esta doctrina se han reconocido dos modalidades: la figura de impedimento colateral por sentencia y el fraccionamiento de la causa de acción. El impedimento colateral por sentencia surte efecto cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, con el resultado de que tal determinación es concluyente en el segundo pleito entre las mismas partes, aunque estén implicadas causas de acción distintas. *A & P Gen. Contractors v. Asoc. Caná, supra*, a la página 762. La figura del fraccionamiento de la causa de acción postula que si un demandante tiene varias reclamaciones que surjan de un mismo evento contra un mismo demandado y radica una o más de esas reclamaciones contra ese demandado, se le aplicará la doctrina de cosa juzgada por fraccionamiento si después de terminado el primer pleito intenta radicar en otro pleito distinto la reclamación que no radicó originalmente. *Ramos González v. Félix Medina*, 121 D.P.R. 312, 332 (1988); *Zambrana v. Tribunal Superior*, 100 D.P.R. 179, 181 (1971); *Valcourt v. Iglesias*, 78 D.P.R. 630, 645 (1955). Esencialmente, la doctrina persigue que en un sólo litigio se obtengan los remedios a que tengan derecho las partes; impidiendo así el fraccionamiento de la causa de acción que comprende reclamos al amparo de teorías legales distintas. *Ramos González v. Félix Medina, supra*, páginas 339-340. Poco importa si los pleitos sucesivos se originan bajo leyes diferentes, ya que puede existir una sola causa de acción, aunque ambos pleitos se invoquen bajo distintas leyes. Lo importante no es la ley en la que se funda la reclamación, sino la causa o razón para reclamar, es decir el asunto planteado.

El efecto de invocar la doctrina de cosa juzgada es que los derechos y obligaciones adjudicados en la sentencia dictada en el pleito anterior constituyen la ley del caso., *U.S.I. Properties v. Registrador*, 124 D.P.R. 448, 468 (1989), citado en *In re: Tormos Blandino*, 135 D.P.R. 573, 578 (1994). Por lo tanto, no pueden reexaminarse, ya que esos derechos y responsabilidades gozan de las características de finalidad y firmeza con arreglo a la doctrina de la Ley del Caso. *Sánchez Rodríguez v. López Jiménez*, 118 D.P.R. 701, 704 (1987). Es doctrina reiterada que los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso. *Management Administration Services Corp. v. E.L.A. de Puerto Rico, y otros,* **2000 J.T.S. 189**, 439, Opinión de 29 de noviembre de 2000; *In re: Tormos Blandino,* 135 D.P.R. 573, 578(1994), citando a *U.S.I. Properties Inc. v. Registrador*, 124 D.P.R. 448, 468 (1989). Lo mismo aplica en los foros administrativos. *Infanzón v. Admor. Estabilización Econ.*, 84 D.P.R. 459, 467 (1962).

## III

La recurrente levanta como primer error que DACO no tomó en consideración la resolución anterior entre las mismas partes, alegando que la misma constituye cosa juzgada. Como discutiéramos, la doctrina de cosa juzgada aplica en el ámbito administrativo, dentro de la misma agencia.

En el caso de autos, la primera querella presentada fue adjudicada y la resolución emitida advino final y firme sin haber sido revisada. Por tal razón, DACO instó un procedimiento ante el TPI con el propósito de que se ordenara cumplir la orden emitida en su resolución de 26 de febrero de 2001. En la vista celebrada a esos efectos, se evidenció que la recurrente había hecho las reparaciones según ordenado por DACO y que sólo le restaba terminar de corregir el problema de filtraciones del techo, lo cual no había hecho debido a que las inclemencias del tiempo no se lo habían permitido. Además, en cuanto a la humedad del piso, ya habían empezado a empañetar el área de la parte inferior exterior de la residencia. Luego de la celebración de la referida vista, y posterior a la presentación de la segunda querella, DACO solicitó desistir, sin perjuicio, del caso ante el TPI, para continuar con procedimientos administrativos que faltaban por concluir en el presente caso contra un **codemandado**.

Cuando una agencia administrativa, que carece de poder coercitivo para poner en vigor una resolución por ella emitida, acude a los tribunales, lo hace con el sólo propósito de hacer cumplir lo que ha dispuesto. Bajo ninguna circunstancia, una solicitud de este tipo puede ser utilizada con el propósito de reconsiderar la decisión emitida. En el caso bajo la primera querella, la resolución era final y firme y sólo restaba darle cabal

cumplimiento a la misma. Sin embargo, DACO solicitó el desistimiento de la acción presentada a esos efectos ante el TPI y le dio curso a una segunda querella, en donde se reclamaban básicamente los mismos defectos que en la primera.

Como cuestión de derecho, lo que procede en cuanto a la recurrente es que DACO presente nuevamente ante el TPI una solicitud para que se haga cumplir lo ordenado en su primera resolución.

## IV
Por los fundamentos antes expresados, se expide el auto solicitado y se revoca la resolución recurrida, en lo concerniente a Orion Contractors Co., Inc.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2003 DTA 75

**1.** Los defectos alegados consistían en que, debido a que el terreno estaba cediendo, las paredes se agrietaron y, por consiguiente, se filtraba el agua hacia el interior de la casa. Además, señalaron filtraciones de agua por el piso e inundaciones causadas por declive en el terreno.

**2.** No obra en el expediente copia de la referida querella.

**3.** A la que asistieron el recurrido, su esposa y el ingeniero Falú, en representación de la recurrente.

**4.** La misma se celebró el 11 de diciembre de 2000, comparecieron, el recurrido por derecho propio y la recurrente, representada por el ingeniero Falú.

**5.** Querella número 100014626.

**6.** A ésta asistieron el recurrido y su esposa, el ingeniero Falú y un representante de Las Haciendas.

**7.** Esta parte no fue incluida en la querella presentada ante DACO. Tampoco es parte recurrente en esta solicitud de revisión judicial ante nos.